IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHARLES D. GREEN,

                    Plaintiff,

         v.                          CASE NO.  09-3055-SAC

ROGER WERHOLTZ,
et al.,

                    Defendants.

<u>MEMORANDUM AND ORDER</u>

    This civil rights complaint, 42 U.S.C. § 1983, was filed by an inmate of the Lansing Correctional Facility, Lansing, Kansas (LCF). Mr. Green paid the filing fee.  As amended, the complaint names the following defendants: Kathleen Sebelius, Governor of Kansas; Roger Werholtz, Secretary of Corrections (SOC); Charles Simmons, Deputy SOC; Elizabeth Rice, "Corrections Manager," Office of SOC; Warden Jay Shelton, Norton Correctional Facility (NCF); Deputy Warden Joel Hrabe, NCF; UTM Thibedeau, NCF; Correct Care Solutions (CCS); Dr. Charles D. Lawhorn, "CCS Regl Medical Dir"; and Dr. John Satchell, CCS employee.


<u>MOTION TO AMEND COMPLAINT</u>

    Since the filing of the complaint, plaintiff has filed a pleading he entitles "Motion to Amend Complaint, Request Jury Trial, and for Immediate Ruling on the Pending Motions . . . ." (Doc. 2). He does not attach a complete "Amended Complaint", which sets forth all his claims and fact allegations from the original complaint together with the desired amendments.  Instead, he simply asks the court to "add" two defendants and states the "motion contains facts

of events which occurred since March 2nd, 2009" that prove misconduct of the part of KDOC and CCS staff.  Plaintiff has not followed the proper procedure for amending a complaint[1].  Although pro se pleadings are to be liberally construed, pro se litigants are still expected to follow the same rules of procedure as all other litigants.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Brown v. Zavaras, 63 F.3d 967, 971-72 (10th Cir. 1995).  Nevertheless, the court will treat this motion as incorporating, rather than supplanting, the original complaint.  Plaintiff is on notice, however, that any additional amendment must be by proper Motion to Amend seeking leave of court, that has a complete Amended Complaint attached.  See Fed.R.Civ.P. Rule 15.  Furthermore, any proposed Amended Complaint must be on forms acquired from the clerk of this court and set forth all plaintiff's claims and information intended to be in his complaint.

Plaintiff's first Motion to Amend (Doc. 4) will be granted, even though the motion in this instance is not necessary[5]. Accordingly, Elizabeth Rice, Corrections Manager, KDOC, and Dr. John Satchell, CCS employee, are added as defendants herein along with the additional allegations contained in plaintiff's motion and attached exhibits.

**MOTIONS FROM OTHER CASE**

---

[1]     An Amended Complaint completely supercedes the original complaint, and therefore must contain all claims the plaintiff intends to pursue in the action. Any claims not included in the Amended Complaint shall not be considered. Plaintiff may not in the future amend his complaint by filing a motion or other paper in which he simply lists additional claims or defendants.

[5]     "A party may amend its pleading once as a matter of course . . . before being served with a responsive pleading . . . ."  Fed.R.Civ.P. Rule 15(A).

Before filing this action, plaintiff filed several motions in a separate case he is litigating against officials of the Johnson County Adult Detention Center (JCADC). <u>Green v. Denning</u>, 06-3298-SAC, 2009 WL 484457 (D.Kan. Feb. 26, 2009). In his prior action, the court found specific motions were not relevant to the JCADC defendants, and denied them without prejudice. Plaintiff was advised that if he filed a new action, he could request that copies of these motions "be filed in the new action." Plaintiff should have filed a separate motion making this request, but instead included it in his Motion to Amend (Doc. 2). The court will grant plaintiff's imbedded motion and direct the clerk to copy the pertinent documents and file the copies herein.

**MOTION FOR APPOINTMENT OF COUNSEL**

Plaintiff also improperly imbedded[6] a Motion to Appoint Counsel in his Motion to Amend (Doc. 2). Plaintiff initiated this action by paying the filing fee, and makes no showing that he is unable to procure the services of private counsel. Even if he were proceeding in forma pauperis, there is no right to appointment of counsel in a civil rights action for money damages. The court finds that plaintiff is capable of presenting the facts, which he believes support his claims, and that appointment of counsel is not necessary. Plaintiff may renew this motion during pretrial proceedings, if this action survives screening[7].

---

[6]     Plaintiff should file separate motions when he seeks unrelated types of court action, and the type of relief he seeks should be reflected in the title of the motion.

[7]     Plaintiff is advised not to file repetitive motions on decided matters, or for instant rulings prior to the court's having considered his claims and the position of any defendant(s) who may be required to answer. The court

**CLAIMS AND REQUESTED RELIEF**

Mr. Green complains of events that allegedly occurred during his confinement at the NCF and the LCF.  He arrived at the Norton Correctional Facility, Norton, Kansas (NCF) on October 28, 2007.  He requested and received a transfer to LCF due to the poor health of his father, and thus is no longer subject to conditions at NCF.  He alleges he will be released in 17 months.

Plaintiff presents his claims in three counts: (I) violation of his Fifth, Sixth, and Fourteenth Amendment rights to due process, access to the courts, and the United States Mail Service; (II) violation of his Eighth Amendment rights to effective medical care and prescribed medication; and (III) violation of his First Amendment right to freedom of speech and expression through suppression of "DVD evidence."  Under count I, Green includes complaints regarding the handling by state officials of his grievances and written complaints.  Thus, Count I is considered as three separate claims: (1) interference with mail, (2) improper handling of grievances and written complaints, and (3) denial of access to the courts.  The bulk of plaintiff's factual allegations are set out under "Nature of Case", rather than under "Supporting Facts" for each of his three counts.  The court has attempted to sort out and consider the facts alleged in his "Nature of Cause" narrative under the appropriate count.

Plaintiff asks the court to require that he immediately be provided with Proscar and Androgel.  He also seeks "actual damages"

_____

will consider plaintiff's motion for preliminary relief once it is properly filed. Any other motions for immediate rulings are superfluous and divert the court's attention and limited resources.

for mental, emotional, psychological[8], and physical pain; punitive damages; and "future medical costs."

**SCREENING**

Because Mr. Green is a prisoner, the court is required by statute to screen his Amended Complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A(a) and (b).  Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

"To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution or law of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); Northington v. Jackson, 973 F.2d 1518, 1523 (10th Cir. 1992).  Defendant "Correct Care Solutions" is clearly subject to being dismissed from this action for the reason that it is an entity and not a "person" amenable to suit under Section 1983.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66, 71 (1989)(neither state nor an "arm of the state" is a "person" which can be sued under Section 1983); Davis v. Bruce, 215 F.R.D. 612, 618 (D.Kan. 2003), aff'd in relevant part, 129 Fed.Appx. 406, 408 (10th Cir. 2005).

---

[8]     "No federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Searles v. VanBebber, 251 F.3d 869, 879 (10th Cir. 2001)(42 U.S.C. § 1997e(e) bars recover of damages for emotional injury without a prior showing of physical injury), cert. denied, 536 U.S. 904 (2002).

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. <u>Trujillo v. Williams</u>, 465 F.3d 1210, 1227 (10th Cir. 2006)(A defendant's direct personal responsibility for the claimed deprivation of a constitutional right must be established); <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1441 (10th Cir. 1996); <u>Olson v. Stotts</u>, 9 F.3d 1475, 1477 (10th Cir. 1993)(affirming district court's dismissal where "plaintiff failed to allege personal participation of the defendants"). It is well-settled that a defendant cannot be held liable in a civil rights action based solely upon his or her supervisory capacity.

A pro se complaint must be given a liberal construction. <u>See Haines v. Kerner</u>, 404 U.S. 519, 520 (1972). However, the court cannot assume the role of advocate for the pro se litigant, and "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-74 (10th Cir. 1997). Moreover, a broad reading of the complaint does not relieve the plaintiff of the burden of alleging sufficient facts to state a claim on which relief can be based. <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991)(Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.); <u>see</u> <u>Riddle v. Mondragon</u>, 83 F.3d 1197, 1202 (10th Cir. 1996). "This is so because a pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." <u>Id</u>.

The court has considered each of plaintiff's claims under the foregoing general standards as well as other more specific standards, and finds the complaint contains the following deficiencies.

## INTERFERENCE WITH MAIL CLAIM

Under "Supporting Facts" for Count 1, Mr. Green baldly states that he has been denied access to the U.S. Mail Service. Elsewhere in the complaint, he alleges that upon his arrival at NCF, his mail access was impeded, and his inbound and outbound legal mail was opened, read, and "blocked from leaving the NCF grounds."

In order to state a claim of unconstitutional censorship of mail, plaintiff must describe the particular pieces of mail affected and how they were mishandled, as well as name the person that actually mishandled his mail and describe his or her wrongful acts. He must also provide the dates and circumstances of each alleged mail incident. Moreover, plaintiff must allege facts to show that the handling of his mail violated a federal constitutional right.

General correspondence to and from inmates is subject to being read and inspected according to well-defined criteria and when accompanied by adequate procedural safeguards. See Procunier v. Martinez, 416 U.S. 396, 413-19 (1974); Guajardo v. Estelle, 580 F.2d 748, 56-57 (5th Cir. 1978)(inmate correspondence with courts, attorneys, and parole officers is legal mail not subject to regular inspection; however, non-legal letters may be inspected in the prison's outgoing and incoming mail), overruled on other grounds by Thornburg v. Abbott, 490 U.S. 401, 423-24 (1989). Procedural safeguards require that an inmate be notified of the rejection of a

letter written by or addressed to him, and be given a reasonable opportunity to protest the decision.  See Procunier, 416 U.S. at 418-19.  Prison officials must be given considerable deference in the regulation of incoming mail, and the monitoring of inmate correspondence is justified if the questioned practice is "reasonably related to legitimate penological interests."  Id. (quoting Turner v. Safley, 482 U.S. 78, 89 (1986)).

Possibly as a basis for this claim, plaintiff alleges that he was not allowed by defendants Thibedeau and Hrabe to send legal mail "using the standard 'Account Withdrawal Request' form", after he had done so several times[9].  He states the "AWR" mail option is "currently widely used" at all other KDOC facilities.  He complains that these defendants forced him "to use stamps so they could destroy his outbound U.S./Legal mail w/o him having any record of mailing it."  He also alleges they "blocked his outbound mail when they discovered" he was sending "legal documents to his father to process in the courts and mail copies for him using the property mail out process."  Plaintiff finally states that his attempts to have defendants Sebelius, Werholtz, Rice, and Simmons "help with" his mail option problem "were ignored."

The facts alleged to support this claim, as opposed to the vague and conclusory allegations, are not sufficient to support a federal constitutional violation.  Plaintiff's statements that his

---

[9]     This claim is unclear, and the court looked to plaintiff's attached exhibits for clarification.  In one, a letter from plaintiff to defendant Rice dated February 27, 2008, plaintiff stated he mailed a grievance "using stamps" because UT Collins and UTM Thibedeau "refused to mail it using funds from (his) account and the postage option created for legal/official mail on the Acct. Withdrawl (sic) Req. form."  In another exhibit, plaintiff's Form 9 "Inmate Request to Staff" dated January 20, 2008, he stated "Unit Team would not process an AWR to send their appeals to KDOC" and he "could not use the 'property mailout' process for another full week as it runs only once a week."

legal mail was opened, read, and blocked are completely conclusory. His only allegations that are factual, that prison officials at NCF made him use postage stamps, evince no federal constitutional violation.  His allegations regarding mail sent to his father are simply too vague.

The court further notes that plaintiff does not describe acts by each and every defendant showing he or she personally participated in reading or censoring plaintiff's mail.  Defendants Sebelius, Werholtz, Simmons, Rice, and Sheldon may not be held liable for the acts of other persons simply because of their supervisory capacities or because they upheld the actual mailhandler's acts on administrative review.  Defendants CCS, Dr. Lawhorn, and Dr. Satchell are not alleged to have had any involvement in plaintiff's mail[10].  Nor does plaintiff allege facts showing defendants Hrabe or Thibedeau actually opened, read or censored specific pieces of his legal mail.

**DENIAL OF ACCESS TO COURTS CLAIM**

In Count I, plaintiff asserts that he is being denied access to the courts, but alleges no facts whatsoever in support.  When court access is impeded by mere negligence, as when legal mail is inadvertently lost, no constitutional violation is stated.  <u>Simkins v. Bruce</u>, 406 F.3d 1239, 1242 (10th Cir. 2005).  Thus, a claim that court access has been impeded by interference with legal mail requires the plaintiff to describe intentional acts by the person

_____

[10]     Rather, the claims against the two doctors involve plaintiff's totally unrelated denial of medical treatment claim.  This fact indicates plaintiff has again improperly joined two unrelated claims in this single complaint.

handling his mail.  Id. at 1242 (citing see Treff v. Galetka, 74 F.3d 191, 195 (10th Cir. 1996).

Moreover, as with any claim of denial of access, a necessary element is a showing of actual injury.  Lewis v. Casey, 518 U.S. 343, 351-352 (1996)(An inmate asserting denial of access to the courts must satisfy the standing requirement of "actual injury.") Id. at 348, 350.  Plaintiff may show injury by alleging actual prejudice to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim, or that a nonfrivolous legal claim has been dismissed or impeded.  Id. at 350, 353; Simkins, 406 F.3d at 1242, (citing Lewis, 518 U.S. at 351-53 & FN 3).  Conclusory allegations of injury will not suffice. Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006)(citing Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999)).  Clearly, plaintiff has not been denied access to this court, as he has two cases pending and has managed to submit a large volume of materials in both.

Furthermore, plaintiff has not described acts by each defendant showing his or her direct personal participation in any incident which resulted in denial of his right of access.

**IMPROPER HANDLING OF GRIEVANCES AND COMPLAINTS CLAIM**

Plaintiff claims that defendants have either lost or refused to respond to his grievances and "written complaints."  Again, there are no "Supporting Facts" under this claim.  Elsewhere in the complaint, Mr. Green alleges that grievances filed to correct his mail problems "were lost, not filed, not returned and not allowed to be sent to the Sec. of Corr. pursuant to KDOC appeal policy."  He

also alleges that a particular grievance filed on December 20, 2007, is "still missing" as Warden Shelton has refused to return the original and a copy "despite dozens of letters and grievances requesting" its return pursuant to K.A.R. 44-15-102(b)(3)(C)[11]. He further alleges that defendant Thibedeau has "refused to sign grievances, then lost" those she refused to sign. He claimed in one exhibited grievance that NCF staff are required to sign and process grievance forms according to KDOC policy rather than NCF policy, which he claimed contradicts state law.

To the extent plaintiff seeks money damages from any defendant for violating the cited Kansas regulations or other prison policy while handling or responding to his grievances or written complaints, such allegations fail to state a federal constitutional violation under § 1983[12]. "[N]ot every violation of state law or state-mandated procedure is a violation of the Constitution." See Massey v. Helman, 259 F.3d 642, 647 (7th Cir. 2001)(citing Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)).

In addition, while this court does not condone prison or KDOC officials losing or ignoring inmate grievances, and would not

---

[11]    This subsection cited by plaintiff currently provides:

   (C) In all cases, the original and one copy of the grievance report shall be returned by the warden to the inmate. The copy shall be retained by the inmate for the inmate's files. The original may be used for appeal to the secretary if the inmate desires. The necessary copies shall be provided by the warden.

K.A.R. 44-15-102(b)(3)(C). Regulations also provide that an inmate shall not file repetitive grievances.

[12]    Kansas Administrative Regulations ("K.A.R."), § 44-15-101 et seq., provide a four-step administrative grievance procedure for inmates in Kansas prisons. Under K.A.R. § 44-15-101b, an inmate must file a grievance within 15 days from the date of discovery. Under K.A.R. 44-15-101b, "[a]n inmate may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process."

dismiss a civil rights action for failure to exhaust in the face of such allegations, prison inmates simply have no federal constitutional right to a grievance procedure while incarcerated. See Walters v. Corrections Corp. of America, 119 Fed.Appx. 190, 191 (10th Cir. 2004)("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."), cert. denied, 546 U.S. 865 (2005); Sims v. Miller, 5 Fed.Appx. 825, 828 (10th Cir. 2001)([I]nsofar as plaintiff contended that CDOC officials failed to comply with the prison grievance procedures, he failed to allege the violation of a federal constitutional right."); see also Walker v. Mich. Dept. of Corrections, 128 Fed.Appx. 441, 445 (6th Cir. 2005)(collecting cases). Since there is no entitlement to a grievance procedure under the Federal Constitution, failure to adhere to prison grievance procedures does not rise to the level of a constitutional violation.

**DENIAL OF MEDICAL CARE CLAIMS**

Plaintiff claims his rights under the Eighth and Fourteenth Amendments are being violated and he is being subjected to cruel and unusual punishment in that he is being denied prescribed medication and necessary medical treatment. In support, Mr. Green alleges[13] he has long been diagnosed with a prostate condition, which for ten

---

[13]    Again, no facts are alleged under "Supporting Facts" for this count. All plaintiff's allegations in support are made in his "Nature of Case" narrative and descriptions of defendants.

years was successfully treated with the medication "Proscar." He
further alleges he was given prescriptions to renew Proscar nine
times by six different CCS doctors, but defendant Lawhorn has
"overruled" these orders and refused to renew this medication "for
profit reasons". Plaintiff alleges that he has been through "months
of painful experimentation[14], and left "completely untreated."

Plaintiff makes similar allegations with respect to an
arthritis condition. He alleges he was previously diagnosed with
arthritis and successfully treated with Androgel, but doctors'
orders for him to receive this medication have been denied, "leaving
him untreated[15]." He also alleges that he provided documentation of
his need for these two medications from his outside physician. In
addition, plaintiff shows that in April 2008, defendant Rice stated
in writing (in response to correspondence from plaintiff and phone
contact with his father) that "the KDOC, Health Care Contract
Consultant" had reviewed plaintiff's medical care, and recommended
"to Correct Care Solutions" that Mr. Green be placed on Proscar, as
he was previously able to manage his prostate symptoms on that
medication. On March 2, 2009, plaintiff was seen by Dr. Legler,
whom he alleges "made it clear that CCS would not allow him to
prescribe a non-formulary medication" like Proscar or Androgel.

The United States Supreme Court has held that an inmate

---

[14]    In an attached exhibit of a letter to defendant Rice dated January 19,
2009, plaintiff stated the "medical department" experimented on him with different
drugs in order to find a "cheaper replacement" for Proscar.

[15]    Plaintiff cites K.S.A. § 65-2837(a)(3) and asserts that defendant
Lawhorn "is no longer allowed to make any decision" as to his health care. He
does not explain how this statute, which governs state licensure of healing arts
practitioners, entitles him to refuse treatment by Dr. Lawhorn and Dr. Satchell.
In any event, state statutes are not a valid basis for a damages claim under §
1983.

advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991); Martinez v. Garden, 430 F.3d 1302, 1304 (10th Cir. 2005). For screening purposes, the court assumes Mr. Green has sufficiently alleged the presence of a "serious medical need."

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." Martinez, 430 F.3d at 1304 (citing Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000)(quotation omitted)). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1305 (citing Riddle, 83 F.3d at 1204 (quotation omitted)). An inadvertent or negligent failure to provide adequate medical care "fail[s] to establish the requisite culpable state of mind[16]."

---

[16]     As the United States Supreme Court explained:

[A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

Estelle, 429 U.S. at 106; Wilson v. Seiter, 501 U.S. 294, 297 (1991).

Furthermore, a mere difference of opinion between an inmate and a medical professional regarding reasonable treatment does not support a claim of cruel and unusual punishment. See Estelle, 429 U.S. at 106-07; Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993)(quarrel between prison inmate and doctor as to the appropriate treatment for hepatitis did not raise an Eighth Amendment claim); Ledoux v. Davies, 961 F.2d 1536 (10th Cir. 1992); El'Amin v. Pearce, 750 F.2d 829, 833 (10th Cir. 1984)(A mere difference of opinion over the adequacy of medical treatment received cannot provide the basis for an Eighth Amendment claim.); Smart v. Villar, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints."). The prisoner's right is to medical care-not to the type or scope of medical care he personally desires.

In the instant action, Mr. Green's allegations and exhibits indicate he has been furnished medical care, just not the particular medications he desires. His conclusory statements that he has received no treatment for his prostate and arthritis conditions are contradicted by allegations and exhibits revealing that alternative treatments have been provided, such as Cardura and Hytrin. A claim of inadequate or ineffective medical care differs from a claim of total denial of medical care. Coppinger v. Townsend, 398 F.2d 392, 394 (10th Cir. 1968). The gist of plaintiff's claim is more

---

Estelle, 429 U.S. at 105-106 (footnote omitted).

accurately that the treatment he has received at NCF and LCF has been ineffective.  The main factual support offered for this claim is that plaintiff's doctor prior to his incarceration and other CCS doctors prescribed Proscar and Androgel and these medications were effective in the past, but Dr. Lawhorn will not allow these specific drugs to be provided now.

Plaintiff's claim rests upon his premise that Proscar and Androgel are the only effective treatments currently available for his conditions.  However, he provides nothing other than his own opinion as support for this premise.  He also fails to provide factual support for his premise that he has not been effectively treated with alternative medications.  His claims of pain and suffering from not being treated with Proscar and Androgel or from being treated with other medications are completely conclusory.  He describes no incident where he presented to prison medical staff with serious symptoms not controlled by, or with serious side effects caused by, alternative medications he was actually taking. In fact, his exhibits indicate that he presented no such complaints for medical assessment.

In essence, plaintiff is alleging that Dr. Lawhorn and Dr. Satchell have failed to determine and provide effective treatment for his medical conditions, and neglected to provide him with Proscar and Androgel.  Allegations of ineffective treatment and negligence present, at most, claims of medical malpractice.  As noted, medical malpractice does not amount to cruel and unusual punishment so as to state a cause of action in federal court under § 1983.  Instead, it gives rise to a cause of action in state court, for which there is a two-year statute of limitations.

Plaintiff's allegations and exhibits also indicate that this controversy amounts to a difference between plaintiff's lay opinion[17] and the professional judgment of the doctors in charge of his medical treatment during his incarceration.  As long as the doctor responsible for plaintiff's treatment has exercised his or her professional judgment as to what treatment is appropriate, no federal constitutional claim is stated.

Plaintiff's allegations and exhibits further show that he was informed by medical personnel in 2007 that CCS employees have a "formulary that we must follow indicating which medications we are allowed to prescribe" and that Proscar and Androgel, "are not medications on our formulary."  No culpable state of mind is suggested by these facts or by plaintiff's allegation that Dr. Lawhorn has been motivated to find a lower cost alternative. Plaintiff's allegations and exhibits unfortunately suggest that he may not have cooperated with attempts to treat his conditions, and refused medication that was not Proscar or Androgel.  Clearly, a prison inmate may not demand that he be provided a particular medicine.  Nor may he refuse treatment with medication other than that which he prefers, or refuse treatment by the doctor who prescribes a different medication, and then make a credible claim that the doctor's actions resulted in a denial of treatment.

Finally, the court notes that plaintiff has alleged no facts showing personal participation in the alleged failure to provide medical treatment by any defendants other than Dr. Lawhorn and Dr.

---

[17]     While plaintiff's exhibits show medical professionals other than Dr. Lawhorn have recommended Proscar, no medical opinion is presented that plaintiff cannot be adequately treated with a drug other than Proscar.

Satchell[18].

## DENIAL OF FIRST AMENDMENT RIGHTS CLAIM

Plaintiff alleges that his rights under the First Amendment to freedom of speech and expression were violated "to suppress medical malpractice and misconduct."  As supporting facts, he alleges that DVD evidence showing medical incompetence was censored and "detained from mailing" to his father.  He refers the court to his Motion for Cease and Desist Order and to Preserve Evidence," which has not yet been filed in this case.

This claim may be the same as part of plaintiff's claim that he has been denied mail access.  Plaintiff provides no facts in his complaint[19] as to when and from where he attempted to mail a DVD to his father or the official reasons given for not mailing the DVD, so as to support a claim of unconstitutional censorship.  Also, plaintiff again fails to allege facts showing that any named defendant was personally involved in a decision to refuse to mail out a video.

## OTHER CLAIMS

Plaintiff complains of other events, which do not clearly fall

---

[18]    Since plaintiff's denial of medical treatment claims appear to be unrelated to most of his other claims, he must address the deficiency of improper joinder with respect to this claim as well.

[19]    Sufficient factual allegations to support plaintiff's claims should have been in his complaint, and not just in subsequent motions, which are neither supplements nor proper amendments to the complaint.  Plaintiff is given the opportunity to allege additional facts in support of his claims, and may do so by filing a "Supplement to his Complaint."  Facts not already included in the complaint, or added in a Supplement in response to this order, or by a proper Second Amended Complaint filed with leave of court, shall not be considered as alleged in support of plaintiff's claims.
     Plaintiff is correct that he should refrain from submitting more exhibits and other documents until he is required to prove his allegations.

under the five claims already considered.  In his narrative "Nature of Case" plaintiff claims defendant Thibedeau "retaliated against" him by firing him from an inside job, and punished him by placing him on an outside work crew, even though she knew he has "severe arthritis, low back pain, prior hernia surgery, and an untreated prostate problem."  The court finds that plaintiff's claim of retaliation by this defendant is completely conclusory.  As plaintiff was recently advised in his other pending civil action: "[A]n inmate claiming retaliation must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."  Fogle v. Pierson, 435 F.3d 1252, 1263-64 (10th Cir. 2006)(citation omitted), cert. denied, 549 U.S. 1059 (2006).

Plaintiff also claims that defendant Thibedeau had over two-thirds of his legal documents and files removed from his cell to be destroyed.  However, no other facts regarding this incident are provided such as the date, location, what materials were taken, and whether they were destroyed.  In any event, plaintiff fails to allege how he was actually injured by removal of part of his legal papers, so as to show a denial of access.  Nor does he allege facts showing that he was not accorded sufficient pre-deprivation due process, or that post-deprivation due process is unavailable through a state court action[20].  See Hudson v. Palmer, 468 U.S. 517, 523 (1984).  Plaintiff has also failed to allege facts showing that any

---

[20]     Whether negligent or intentional, deprivations of personal property by a prison employee, which may be redressed through adequate post-deprivation remedies "are imbued with" the requisite due process.  An inmate in Kansas may sue for wrongful or negligent loss of personal property in state court.  Because Mr. Green has this adequate post-deprivation remedy, he does not state a federal constitutional claim of deprivation of property without due process.  Smith v. Maschner, 899 F.2d 940, 943 (10th Cir. 1990).

defendant other than Thibedeau was involved, again raising the question of improper joinder.

**PLAINTIFF REQUIRED TO SHOW CAUSE**

Plaintiff is ordered to show cause why this action should not be dismissed for failure to state sufficient facts to support a claim of federal constitutional violation. See §1915(e)(2)(B)(ii) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted."). If plaintiff fails to submit a timely response or a Supplement with additional facts that cure the deficiencies in the complaint, this action may be dismissed without further notice.

**IT IS THEREFORE ORDERED** that plaintiff's Motion to Amend (Doc. 2) is granted; that Elizabeth Rice, "Corrections Manager" KDOC, and Dr. John Satchell, CCS employee, are added as defendants; and that plaintiff's Motion to Amend and attachments (Doc. 2) are incorporated with his original complaint (Doc. 1) and construed as plaintiff's First Amended Complaint.

**IT IS FURTHER ORDERED** that plaintiff's Motion to copy specific documents filed in Case No. 06-3298 and file the copies in this case (Doc. 2) is granted; and that plaintiff's motion for appointment of counsel (Doc. 2) is denied, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to show cause why this action should not be dismissed for the reasons stated herein and/or to file a Supplement alleging

additional facts sufficient to state a federal constitutional violation.

The clerk is directed to copy the following documents filed in Case No. 06-3298, and file those copies as plaintiff's pleadings in the instant case: "Motion to Enforce KDOC Administrative Medical Ruling of April 11, 2008" (Doc. 26), Supplement to Motion to Enforce (Doc. 27), "Motion for Immediate Preliminary Injunction" (Doc. 28), "Motion for Cease and Desist Order and to Preserve Evidence" (Doc. 29), and "Motion to Prohibit Retaliation . . ." (Doc. 30).

**IT IS SO ORDERED**.

Dated this 24th day of April, 2009, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge