# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS


CHARLES D. GREEN,

                **Plaintiff,**

       v.                       **CASE NO.  09-3055-SAC**

ROGER WERHOLTZ,
et al.,

                **Defendants.**

## MEMORANDUM AND ORDER

This civil rights action, 42 U.S.C. § 1983, is before the court upon plaintiff's responses to the court's screening order and his numerous motions. Having considered all materials in the file, the court finds as follows.

On April 24, 2009, the court entered a Memorandum and Order setting forth deficiencies in the complaint as amended, and granting plaintiff time to show cause why this action should not be dismissed or, alternatively, to file a supplement alleging additional facts sufficient to state a federal constitutional violation.


## CLAIMS

In the court's prior Memorandum, it summarized plaintiff's claims as follows: (1) improper handling of his grievances and written complaints, (2) interference with his legal and personal mail, (3) violation of his First Amendment rights to free speech by refusing to mail a "holiday DVD" to his father, (4) denial of access to the courts, and (5) denial of effective medical care and prescribed medication in violation of the Eight Amendment. Plaintiff has not taken issue with this summary of his claims. The

court emphasizes that its consideration in this Order is limited to these five claims because a proper motion to amend to add any other claims has not been filed and granted. The court finds that plaintiff is a vexatious litigant who, despite clear directions from the court with quotations from particular rules, continues to ignore the Federal Rules of Civil Procedure regarding amendments and joinder; and to check his impulse to file a stream of unnecessary motions and repetitive and voluminous exhibits, which include conclusory and speculative allegations of an ever-widening variety[1].

## RELIEF REQUESTED

The only injunctive relief requested in the complaint is for the court to order that Mr. Green be provided with the medications Proscar and Androgel. Plaintiff seeks monetary relief for pain and suffering, "future medical" expenses, and costs.

## AMENDMENT TO COMPLAINT

In its screening order, the court explained the proper procedures for amending a complaint, and found plaintiff had not followed those procedures. Nevertheless, the court liberally construed plaintiff's first incomplete Motion to Amend (Doc. 2) "as incorporating, rather than supplanting, the original complaint" and allowed the nonconforming amendment[2].

On the day the screening order was filed, the clerk copied an

---

[1] Mr. Green is again advised that his filing of redundant and voluminous motions and materials has undoubtedly served to impede rather than facilitate the progress of this case.

[2] Plaintiff was plainly notified that "any additional motion must be by proper Motion to Amend" and that the motion must have a complete Amended Complaint attached that is on court-provided forms.

original document that was attached as an exhibit to plaintiff's Motion to Amend (Doc. 2, Attach. 1) and erroneously filed it as plaintiff's "First Amended Complaint" (Doc. 4)[3]. Doc. 4 does not contain a case caption of this or any court case. It is a copy of correspondence written by plaintiff to Mr. Shipman at LCF, the undersigned judge, Disciplinary Counsel at the Kansas State Board of Healing Arts, and the Office of Civil Rights/U.S. Dept. of Health, with copies of exhibits interspersed within its pages. It was submitted by plaintiff and considered by the court as an exhibit attached to Doc. 2. Doc. 4 erroneously docketed as "First Amended Complaint" shall be ordered stricken from the record in its entirety[4]. The court repeats for clarity that the First Amended Complaint in this case consists of Doc. 1 and Doc. 2 combined, and no separate First Amended Complaint was submitted.[5] Thus, any party answering the complaint as amended in this case must be served with and respond to both Docs. 1 and 2, which together constitute plaintiff's "First Amended Complaint".

## PENDING MOTIONS AND OTHER FILINGS

Mr. Green also has pending a 2006 civil action against officials at the Johnson County Adult Detention Center (JCADC), in

---

[3]     Since a complete complaint should be attached to a Motion to Amend, it is assumed that clerk's office personnel copied this document attached to the motion thinking it was the Amended Complaint. No First Amended Complaint was attached or submitted, and the court instead construed Doc. 1 and Doc. 2 combined as the First Amended Complaint.

[4]     This exhibit remains attached to Doc. 2.

[5]     As the court noted, plaintiff's Motion to Amend (Doc. 2) resulted in Elizabeth Rice, KDOC Corrections Manager, and Dr. John Satchell, CCS employee, being "added as defendants herein along with the additional allegations contained in plaintiff's motion and attached exhibits." Plaintiff did not challenge this construction.

which he filed several motions regarding actions by KDOC employees. See Green v. Denning, No. 06-3298-SAC. Those motions were copied from that case by the clerk and filed herein in accordance with the screening order. Those motions are: Motion to Enforce KDOC Administrative Medical Ruling (Doc. 5); Supplement to Motion to Enforce and Motion to Appoint Counsel (Doc. 6); Motion for Immediate Preliminary Injunction (Doc. 7); Motion for Cease and Desist Order and to Preserve Evidence (Doc. 8); and Motion to Prohibit Retaliation, Motion for Appointment of Counsel, and Motion for Preliminary Injunction (Doc. 9). He has also improperly imbedded motions in five Supplements he has filed herein and has submitted several additional documents docketed as exhibits (Docs. 14, 15, 16, 17).

The court has considered plaintiff's "Motion to Enforce KDOC Administrative Medical Ruling of April 11, 2008, and that of Seven Attending Physicians" (Doc. 5), together with plaintiff's "Second and Supplement Motion to Enforce KDOC Medical Rulings" (Doc. 6)[6], and denies the motion. This federal court has no direct authority to "enforce" an administrative ruling of a state agency. Moreover, the particular "ruling" on April 11, 2008, to which plaintiff refers is a response to his administrative grievance advising him that a recommendation was made to Correct Care Solutions (CCS). It is not a "clear and indisputable" order creating a duty on the part of defendants to provide the particular medications plaintiff desires. This motion to enforce ruling and plaintiff's request for the court to "enforce" the alleged orders of his prior treating physicians are

---

[6] Plaintiff's motion to appoint counsel, imbedded in Doc. 6, is discussed separately herein.

nothing more than inartful attempts by Mr. Green to obtain the injunctive relief sought in the complaint. Plaintiff must prove his entitlement to the requested injunctive relief before the court will issue an order granting any such relief.

The court has considered plaintiff's "Motion for Immediate Preliminary Injunction" (Doc. 7) together with his "Motion for Preliminary Injunction" (Doc. 9), and denies these motions. In the first (Doc. 7), plaintiff requests that the court immediately prohibit "prison authorities from denying him proven and effective medications" and order that his medical care be provided by an "independent" doctor. However, the facts and arguments made in this motion fall far short of showing that Mr. Green is entitled to the requested relief. The title of plaintiff's other motion for a preliminary injunction (Doc. 9), the title includes "Preliminary Injunction to Cease 8th Amend. Medical Violations of Deliberate Indifference Causing Undue Daily Pain, Suffering and Mental Torment." The allegations made in support of this request are those made to support his claims of denial of medical treatment. Facts are not alleged in either motion to establish any of the factors, which plaintiff has the burden of proving in order to be entitled to a preliminary injunction.

A preliminary injunction is an extraordinary remedy that should only be granted when the moving party clearly and unequivocally demonstrates its necessity. See Schrier v. Univ. of Co., 427 F.3d 1253, 1258 (10th Cir. 2005); Greater Yellowstone Coal. v. Flowers, 321 F.3d 1250, 1256 (10th Cir. 2003)("Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."). To obtain a preliminary injunction, the

movant must show: (1) a substantial likelihood of success on the
merits; (2) irreparable harm to the movant if the injunction is
denied; (3) the threatened injury outweighs the harm that the
preliminary injunction may cause the opposing party; and (4) the
injunction, if issued, will not adversely affect the public
interest. Schrier, 427 F.3d at 1258; Kikumura v. Hurley, 242 F.3d
950, 955 (10th Cir. 2001). "Because the limited purpose of a
preliminary injunction is merely to preserve the relative positions
of the parties until a trial on the merits can be held" the Tenth
Circuit has identified "three types of specifically disfavored
preliminary injunctions . . . (1) preliminary injunctions that alter
the status quo; (2) mandatory preliminary injunctions; and (3)
preliminary injunctions that afford the movant all the relief that
[he] could recover at the conclusion of a full trial on the merits."
Schrier, 427 F.3d at 1258-59 (quoting O Centro Espirita Beneficiente
Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 979 (10th Cir. 2004),
cert. denied, 544 U.S. 973 (2005)). These disfavored injunctions
are "more closely scrutinized to assure that the exigencies of the
case support the granting" of this extraordinary remedy. Schrier,
427 F.3d at 1259 (quoting O Centro, 389 F.3d at 975). A preliminary
injunction is "mandatory" if the relief "affirmatively requires the
nonmovant to act in a particular way, and as a result . . . places
the issuing court in a position where it may have to provide ongoing
supervision to assure the nonmovant is abiding by the injunction."
See O Centro, 389 F.3d at 979. "[A] party seeking such an
injunction must make a strong showing both with regard to the
likelihood of success on the merits and with regard to the balance
of harms. . . ." Id. In addition, injunctions are only issued "to

prevent existing or presently threatened injuries" and "will not be granted against something merely feared as liable to occur at some indefinite time in the future." Connecticut v. Com. of Mass., 282 U.S. 660, 674 (1931). Finally, it has long been established that prison management functions should be left to the broad discretion of prison administrators. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454 (1989); Meachum v. Fano, 427 U.S. 215 (1976). Thus, a court should grant preliminary injunctive relief involving prison management only "under exceptional and compelling circumstances". See Taylor v. Freeman, 34 F.3d 266, 270 (4th Cir. 1994). Intervention "in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts", especially "where mandatory injunctive relief is sought and only preliminary findings as to the plaintiff's likelihood of success on the merits have been made." Id. at 269 (citations omitted).

Mr. Green seeks a preliminary injunction that would require defendants to act in a particular way and that would alter the status quo rather than preserve it. He asks the court to require defendants to provide him with two specific medications that previously were effective in treating his conditions, but which have been disallowed by the CCS Regional Medical Director as non-formulary. He also seeks to require defendants to provide him with medical care from an independent physician. This injunction, in effect, would not permit a KDOC physician to attempt to determine and prescribe an effective alternative treatment. Plaintiff thus seeks to alter the status quo by interjecting the court into the management of medical care provided to an inmate in the custody of

the KDOC and the professional and business determinations of the CCS. The KDOC and the CCS professionals are entitled to a high degree of discretion with regard to these matters. While some of the allegations in the complaint and motions are very serious, at this stage of the proceedings, they are nothing more than allegations. Mandating that plaintiff be provided with specific medication at this juncture would be an inappropriate interference with that discretion.

The court finds that plaintiff has not alleged sufficient facts in his motions or his complaint, as amended, to make a strong showing of a likelihood of success on the merits. Plaintiff repeatedly makes the bald statement that he is receiving no medical treatment, when his own allegations elsewhere and his exhibits show he has had numerous medical examinations, tests, and assessments by several doctors and has been prescribed alternative medications and treatment. Similarly, his allegation that KDOC has denied his preferred medications "on the sole basis that they do not have medical records" showing Dr. Feder previously prescribed them, is refuted by his own allegations elsewhere that they are being denied because they are non-formulary drugs, and less expensive drugs are available[7]. In any event, records showing Dr. Feder prescribed Androgel and Proscar years ago, establish neither that those medications are currently necessary nor that all alternative medication is ineffective. Plaintiff's voluminous pleadings and exhibits contain clear indications that this matter may eventually

---

[7] This is not the only instance where Mr. Green varies his interpretations of an event in a self-serving manner rather than consistently describing the event in a factual manner. By doing so, he undermines his own credibility.

be found to amount to nothing more than his disagreement with the medication and course of treatment prescribed by CCS medical providers, and even that he may have waived some claims by refusing at times "to consent to" treatment with alternative medications or by particular doctors.[8]  Generally, an inmate may refuse prescribed medical treatment, but then has little ground to complain regarding a lack of treatment.

Furthermore, plaintiff has not shown that he will suffer irreparable injury if his request for a preliminary injunction is denied.  See Schrier, 427 F.3d at 1258.  The party seeking a preliminary injunction "must establish both that harm will occur, and that, when it does, such harm will be irreparable." Vega v. Wiley, 259 Fed.Appx. 104, 106 (10th Cir. Dec.17, 2007), cert. denied, 128 S.Ct. 2069 (2008); Wis. Gas Co. v. F.E.R.C., 758 F.2d 669, 674 (D.C. Cir. 1985)(citation omitted)(Movant "must show that 'the injury complained of is of such imminence that there is a clear and present need for equitable relief' to prevent irreparable harm.").  Irreparable harm is more than "merely serious or substantial" harm.  Id. (citation omitted).  "To constitute irreparable harm, an injury must be certain, great, actual 'and not theoretical'."  Heideman v. S. Salt Lake City, 348 F.3d 1182, 1189 (10th Cir. 2003)(quoting Wis. Gas Co., 758 F.2d at 674).

---

[8]     In Oxendine v. Kaplan, 241 F.3d 1272 (10th Cir. 2001), the Tenth Circuit observed that "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation," id. at 1277 FN 7 (internal citations and quotation marks omitted), absent evidence the prison official "knew about and disregarded a 'substantial risk of harm' to [the prisoner's] health or safety." Id. at 1277. Furthermore, the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." Perkins v. Kan. Dep't of Corrections, 165 F.3d 803, 811 (10th Cir. 1999); see also Self v. Crum, 439 F.3d 1227 (10th Cir. 2006).

Plaintiff's complaint contains the following statements: the alleged lack of treatment "has caused numerous physical injury(s)"; "subjects plaintiff to serious permanent injury daily"; has resulted in "worsened" conditions "causing a severe and negative impact on his daily activities", and is subjecting him to "permanent injury and or death." These statements are completely conclusory and are not facts showing that Mr. Green faces immediate and irreparable harm. Nor are they corroborated by any independent evidence. Mr. Green alleges he has received no treatment for his arthritis for over 40 months and for his "BPH" for over 15 months, and has provided voluminous portions of an administrative record regarding his requests, demands, and claims for medical treatment. Yet, he has produced not a piece of evidence that a medical professional has diagnosed him as in danger of irreparable injury as a result of decisions to attempt to treat him other than with Proscar and Androgel. Moreover, only a couple of his numerous medical requests include any complaint of discomfort from arthritis and prior lower back and shoulder injuries, and frequent and interrupted urination[9]. Thus, the court is not at all convinced at this juncture that plaintiff has shown a likelihood of success on the merits or the existence of imminent irreparable harm. The court concludes that plaintiff has not established his entitlement to the extraordinary remedy of a preliminary injunction as to his medical treatment.

Within his second motion for preliminary injunction (Doc. 9), plaintiff also requests "an injunction to prohibit the (KDOC) from

---

[9]     In the bulk of plaintiff's exhibited "medical requests" and grievances directed to medical personnel he repeatedly sought a lower bunk assignment and work and stair restrictions, rather than describing serious physical symptoms for which he requested immediate medical attention.

any form of retaliation against him for filing a complaint regarding work conditions, unresolved medical issues, or any other violations of his constitutional rights . . . ." He seeks to specifically prohibit any harassment, intimidation, threats, discrimination, "forced painful employment", his removal from LCF, and "any adverse action". It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts, "even where the actions taken in retaliation would be otherwise permissible." See Smith v. Maschner, 899 F.2d 940, 948 (10th Cir. 1990). However, mere conclusory allegations of constitutional retaliation do not suffice. Frazier v. Dubois, 922 F.2d 560, 562 FN1 (10th Cir. 1990). Instead, plaintiff must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998);; see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999)("[T]he inmate must allege more than his personal belief that he is the victim of retaliation."). He must prove that "but for" the retaliatory motive, the incidents of which he complains would not have taken place.

In his motion to enjoin retaliation, Mr. Green mostly repeats allegations previously made in support of his claims and, in the most conclusory fashion, characterizes the acts or events as retaliatory.[10] He does not sufficiently describe a particular retaliatory act by a named defendant and show that it would not have

---

[10] Many of the incidents listed in this motion are referred to in plaintiff's numerous exhibits, where non-retaliatory motives are indicated. Plaintiff's conclusory, speculative statements are not accepted as true, particularly when his own exhibits and prior statements are contradictory.

occurred but for that defendant's retaliatory motive. Nor has he alleged facts to prove any of the prerequisite factors for extraordinary preliminary relief against future retaliation. In his complaint, he alleged that he was retaliated against by defendants Thibedeau and Hrabe. He cannot seek an injunction against these two individuals however, since they were at NCF, where he is no longer confined. The court concludes that plaintiff has failed to meet his burden of establishing his entitlement to a preliminary injunction prohibiting retaliation by the KDOC, and this motion is denied.

Any claims mentioned by plaintiff in his two motions for preliminary injunction that were not presented in his complaint as amended, such as alleged danger or injury from having to climb stairs, job-related injuries[11] or firing, denial of aspirin, medicated shampoo, and skin rash cream, and ADA claims, have been considered as a basis for the motions only. They have not been added as claims in this action by proper amendment, and will not be considered further herein.

Within his first preliminary injunction motion (Doc. 7) plaintiff imbedded a request for the court to order preservation of all recorded telephone calls made by plaintiff back to November 1, 2007, and up to two years after his release. He claims the content of these calls "is supportive of medical deliberate indifference." This discovery request is premature, not properly presented, and not supported with any factual substance. Accordingly, it is denied

---

[11] Plaintiff's statement that while employed at a prison-based industry he was "physically threatened, harassed, browbeaten, discriminated against and wrongfully terminated" is not supported by any facts. Moreover, he attributes his alleged work-related mistreatment to individuals at the LCF, who are not defendants herein.

without prejudice.

The court has considered plaintiff's "Motion for Immediate Cease and Desist Order Pursuant to K.S.A. 65-2837 . . . ." (Doc. 8). In this motion, Mr. Green seeks an Order prohibiting defendant Dr. Lawhorn from making any more medical decisions regarding plaintiff. As grounds, he alleges that Dr. Lawhorn cancelled his prescription to Proscar, disapproved prescriptions of several KDOC treating physicians ordering that plaintiff be treated with Proscar, directed experimentation upon Mr. Green to find a cheaper alternative drug, and that the experiments caused "painful side effects." He further claims that defendant Lawhorn refuses to treat his arthritis, and is "forcing painful and injury prone work and sleeping conditions" upon plaintiff "based on greed and vengeful retaliation." Plaintiff cites K.S.A. 65-2837 as the legal authority for this motion. This state statutory provision is the definitions section of the Kansas Healing Arts Act, which governs the revocation, suspension, and denial of licenses under the Act. It does not provide this federal court with authority to enjoin defendant Dr. Lawhorn from making medical decisions in plaintiff's case. This is but another inartful attempt by plaintiff to obtain relief prior to proving the allegations in his complaint.[12]

Plaintiff includes in his Motion for Cease and Decease Order (Doc. 8), a motion to "Preserve Evidence (DVD)" claiming it is "critical to" his civil action. No factual allegations are made in the motion to support this request for relief. The only support is

---

[12]    Additional allegations made in this motion regarding work-related injuries and failure to prescribe work restrictions were not raised in the complaint, and shall not be considered further in this action.

an attached letter from plaintiff to Jim Collins, Office of Warden at LCF, in which plaintiff objected to the decision of prison officials not to mail out a "holiday DVD" made by him for his daughter. Reasons were given including that prison officials were made aware of a child custody order restricting what he mails to his daughter. The court finds this discovery request is premature, and that sufficient facts are not alleged showing this DVD is relevant to Mr. Green's Eighth Amendment claims, which it determines herein are the only claims going forward in this action. Accordingly, this request is denied, without prejudice.

In Doc. 9, plaintiff also includes a Motion for Appointment of Counsel.[13] In support, he alleges that the issues have become very complex and he does not have the ability or access to legal materials to litigate this case. Plaintiff also imbedded a motion to appoint counsel in Doc. 6. In addition, he reargues his prior motion to appoint counsel in his Response (Doc. 10) and even relies on similar motions in his 2006 case. In Doc. 6, he alleges that the legal issues are complex and involve a large number of doctors, prison staff, state officials, medical experts, medical files and ongoing medical neglect. As the court stated upon previously denying plaintiff's motion for counsel, Mr. Green has made no showing that he is unable to procure the services of private counsel, and even if he were proceeding in forma pauperis (IFP) herein, there is no right to appointment of counsel in a civil rights action for money damages.

Mr. Green has not filed a new, properly-supported IFP motion in

---

[13]    Plaintiff is again reminded that he must file a separate motion for each different type of court action he seeks.

this case.  <u>Cf</u>. <u>Boling-Bey v. U.S. Parole Com'n</u>, 559 F.3d 1149, 1152
(10th Cir. 2009).  He initiated this new civil action by paying the
filing fee.  He may be correct that he was allowed to proceed IFP in
his 2006 case and before that in state criminal cases.[14]  However,
considerable time has passed since he was found to meet the
statutory qualifications for IFP status in federal court.  In any
event, he must satisfy the filing fee prerequisites for each new
civil action that he files in federal court, and thus must submit a
proper motion to proceed IFP in this action supported by a certified
statement of his inmate account for the appropriate six-month
period.[15]  <u>See</u> <u>id</u>.  Plaintiff's motions to appoint counsel are
denied, without prejudice, for these reasons[16] and those previously
stated.

Imbedded at page 32 of plaintiff's Second Supplement (Doc. 11)
is another Motion for Discovery.  Plaintiff should have filed this
as a separate motion.  The clerk copied this document and filed the
copy as a separate motion (Doc. 12).  The clerk has no duty to parse
every page of plaintiff's excessive filings to uncover imbedded

---

[14]     Plaintiff's attachments imbedded in his "Fifth Supplement" do not
satisfy the requirements of 28 U.S.C. § 1915 for proceeding IFP herein.

[15]     A prisoner seeking to bring a civil action in forma pauperis must
submit an affidavit, including a statement of all assets, which states that the
prisoner is unable to pay the fee.  28 U.S.C. § 1915(a)(1).  The prisoner also
must submit a certified copy of his inmate trust fund account statement(s) for the
six-month period immediately preceding the filing of his complaint. § 1915(a)(2).
The prisoner must obtain this certified statement from the appropriate official
of each prison at which he was or is confined.  <u>Id</u>.  Though plaintiff did not
submit a motion to proceed IFP at the time he filed this complaint, he may now do
so.  The court assumes the financial information from his inmate account must be
for the six-month period immediately preceding the filing of the motion.

[16]     Section 1915 (a)(1) allows a court to authorize the prosecution of any
action without prepayment of fees by a person who submits an IFP application  in
accord with § 1915(a)(1) and (2).  Section 1915(d) provides that <u>in</u> <u>IFP</u> <u>cases</u>
(emphasis supplied) officers of the court shall issue and serve all process, while
subsection (e)(1) provides that the court may request an attorney to represent any
person unable to afford counsel.

motions, and such hidden motions are not tracked as pending. Plaintiff also filed a "Supplement to Motion for Discovery" in his "3rd Supplement" (Doc. 13). In this motion, he alleges that he has been allowed to view his medical file, but two requests for copies of the file have been denied.[17] At the same time, he states that copies may be made for ten cents each. Plaintiff's allegations fail to show that he is being denied access to his medical file. The court denies this discovery request as not factually or legally supported. Plaintiff may renew this motion after the Martinez Report is filed. His request for sanctions against CCS for "fraud" is not supported, and is denied. His requests regarding recorded phone calls and "the Holiday DVD" were previously addressed.

Page 57 of plaintiff's "Fourth Supplement" begins "Section III Motion to Add Defendants" (Doc. 18) at 57. This is not a proper motion seeking leave to amend with a full Second Amended Complaint attached. No parties or claims are added to this action based upon this page. On the same page, plaintiff requests "immediate injunctive relief" in "the form of removing him from any outside work detail which can cause future injury, pain or suffering" and sanctions. Id. No discussion of the prerequisite factors for this preliminary injunction is included. Moreover, plaintiff's allegations regarding work-related injuries are not shown to be sufficiently related to the medical claims in this action, and must be litigated in a separate civil action.

Plaintiff begins page 63 of his Fourth Supplement with "Motion for a Preliminary Injunction" regarding legal files and further

_____

[17]    In an attachment, plaintiff remarked that he had viewed his medical records many times and was allowed to take notes.

harm.  No discussion whatsoever of any grounds for, or factors justifying, this motion are included.  Plaintiff begins page 58 with "Section IV Retaliation Claim-Count IV."  This is not a proper amendment and no additional claims of retaliation or harassment were added to this action by this method.  In any event, no facts are alleged in support of this claim[18].  Plaintiff's requests for relief for "prison reform" beginning on page 67 are not a proper motion to amend, and are not added to this action.  The court denies all motions and requests in Doc. 18.

Plaintiff's Fifth Supplement (Doc. 19) also includes several motions.  Plaintiff seeks another "Cease and Desist Order", this time against "all acts of retaliation".  This motion is not adequately supported and is denied.  In this Supplement/motion, plaintiff alleges that three boxes of his legal materials were transferred to LCF and "accepted by that staff", but that in December 2009, UTM Arnold gave him 2 to 3 days to reduce his legal files to only one box, "thus censoring 70%" of his legal materials. He generally claims that this "violated" his "ability to effectively represent himself, or aid his attorneys in 5 active cases."  He also claims this constitutes censoring of his legal mail including his future incoming legal mail as he will be forced to remove an equal amount of legal materials within 5 days of receipt of new legal mail.  He claims this policy violates Kansas law, while exhibiting an IMPP that expressly limits legal materials retained by any inmate to one box of specific dimensions.  His bald statement that this

---

[18] Plaintiff baldly states that all but three defendants "are hereby cited with retaliation" and that their "actions have manifested some form of retaliation" for his filing a grievance "or" this civil action against them.

incident was an act of retaliation is not supported by any facts whatsoever showing the reduction would not have occurred but for a retaliatory motive.

The court finds that this incident occurred at the LCF after this complaint was filed, and has not been added to this action by the proper filing and granting of an Amended Complaint.[19] Nor are the persons alleged to have participated in this event defendants herein. Moreover, this claim is not related to plaintiff's Eighth Amendment medical claims, and would not be properly joined. To litigate a claim based on this incident, plaintiff must file a separate civil action.[20]

Likewise, plaintiff's assertion of denial of equal protection on page 45 of his Fifth Supplement has not been added by proper amendment, and is not supported by sufficient factual allegations including the description of an underlying causal act by a defendant. The court also denies yet another imbedded request for counsel based solely upon this reduction in legal materials, as it is supported by no facts. Plaintiff's motions in his Fifth Supplement (Doc. 19) are denied.

## DISCUSSION

---

[19]    The same is true of plaintiff's claims that on November 10, 2009, "LCF" censored e-mails and letters to him regarding possible parole plans from a city councilman in Nebraska because they included a city map; that in December, 2009, work injuries were "covered up" by Arnold and Shipman; and that a box of legal materials he mailed to his father in February 2010 was not treated as legal mail. To litigate these claims, plaintiff must file separate civil actions.

[20]    The court is not suggesting that these facts evince a valid federal constitutional claim. Generally, a prison rule limiting the amount of legal materials an inmate may retain in his cell is "reasonable and necessary." See Green v. Johnson, 977 F.2d 1383, 1390 (10th Cir. 1992). Furthermore, plaintiff has alleged he is represented by counsel in his criminal cases, which satisfies his right to access in those cases. In addition, he must show actual injury to a non-frivolous court action in order to make out a claim of denial of access.

The court proceeds to consider whether or not plaintiff has cured the deficiencies in his complaint with regard to each claim. As previously noted, even though the full filing fee has been paid, the court must dismiss a complaint that: (1) is frivolous or malicious; (2) fails to state a claim upon which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915A (dismissal of actions in which prisoner seeks redress from a governmental defendant); see also 42 U.S.C. § 1997e (dismissal of prisoner actions brought with respect to prison conditions); 28 U.S.C. § 1915(e)(2)(B)(dismissal notwithstanding payment of the filing fee). In considering the plaintiff's filings, the court is mindful of his pro se status, and its obligation to read his pleadings liberally. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the court cannot assume the role of advocate for the pro se litigant, and a broad reading of the complaint does not relieve the plaintiff of the burden of alleging sufficient facts to state a claim on which relief can be based. Id. (Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Nor does pro se status relieve Mr. Green of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law. See McNeil v. U.S., 508 U.S. 106, 113 (1993); Ogden v. San Juan County, 32 F.3d 452, 455 (10th Cir. 1994). Mr. Green's complaint is subject to the requirements set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). To survive screening, "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." See Iqbal, 129 S.Ct. at 1949 (quoting Bell, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In addition, plaintiff must "plead that each Government-official defendant, through [his] own individual actions, has violated the Constitution." See id. at 1948.

Since the court's screening order was filed, Mr. Green has responded by submitting a "Reply to Show Cause and Supplement to Original Complaint" (Doc. 10), a Second Supplement to Original Complaint (Doc. 11), a Third Supplement to Show Cause (Doc. 13), a Fourth Supplement to Show Cause with Motion to Add Claims, (Doc. 18), and a Fifth Supplement to Show Cause (Doc. 19), each with exhibits attached. These responses contain a total of over 500 pages.

The content of each of plaintiff's separate and imbedded motions as well as his Reply and Supplements, not one of which is a proper motion to amend, has been considered as support for the particular motion or response in which it was presented. However, no "new" claims mentioned in these filings, that is ones not already presented as a claim in the "first amended complaint", shall be considered further in this action. Perhaps plaintiff did not understand prior instructions that in order to add different defendants or claims to this action, he must, like every other litigant, follow the Federal Rules of Civil Procedure and file a Motion to Amend with a complete Amended Complaint attached. As

plaintiff was admonished in the court's prior screening order, he may not "amend" his complaint by simply filing "motions" mentioning defendants (or claims) he might like to add[21]; and if such a motion were accepted as an amended complaint, that motion would completely supercede the prior complaint and anything not included would no longer be before the court. Mr. Green is obviously capable of understanding and complying with this rule, as have countless other pro se litigants much less educated and literate than he. As he was clearly informed in his 2006 case, a prisoner litigant may not avoid the requirement that he eventually pay a full, separate filing fee for each separate set of claims he seeks to litigate in federal court by filing a "morass" of improperly-joined claims and defendants in a single action. Nor may he avoid the three-strikes provision of the PLRA in the same fashion. The court repeats for emphasis that plaintiff has filed no proper Motion to Amend with a complete Second Amended Complaint attached that is upon court-approved forms.[22]

In the court's screening order Mr. Green was provided the opportunity to state additional facts in support of the claims raised in his "First Amended Complaint" by filing a Supplement. He filed two timely (Docs. 10 & 11) and three untimely (Docs. 13, 18, 19) Supplements or responses.[23] In his Reply and Supplement (Doc.

---

[21] Plaintiff's first amendment was liberally construed and allowed by the court, but was nonetheless an amendment. Plaintiff was informed that he had not followed the proper procedure to amend his complaint, and he would be required to follow proper procedure to make any future amendments in this case.

[22] It should go without saying that a motion to amend to include improperly joined claims or parties is futile.

[23] Plaintiff's Third Supplement (Doc. 13) simply repeats allegations previously made and includes exhibits already submitted, some multiple times. Plaintiff's Fourth Supplement (Doc. 18) mainly contains allegations regarding

10), Mr. Green refers the court to "the contents of the 5 motions" copied and filed herein from his 2006 case. This court is not obligated to comb these voluminous materials filed as motions for allegations that should have been set forth in the complaint or a proper amendment or supplement. Nevertheless, this court has carefully considered all plaintiff's Supplements and Motions in determining whether or not he has alleged sufficient additional supporting facts for the five claims in his first amended complaint.

## INTERFERENCE WITH MAIL CLAIM

In the court's screening order, plaintiff's claim of denial of access to U.S. Mail Service was construed as a claim that while at the NCF his mail access was impeded and his inbound and outbound legal mail was opened, read, and "blocked from leaving" NCF grounds. However, the court found that plaintiff made only vague and conclusory statements in support that were insufficient to show the violation of a federal constitutional right. The court noted that an underlying basis for this claim appeared to be the requirement that Mr. Green use postage stamps rather than account vouchers for certain mailings, which on its face evinced no federal constitutional violation. In addition, the court found plaintiff had not alleged facts showing sufficient personal participation by any of the named defendants in the alleged interference with his mail.

---

persons other than named defendants and unrelated complaints regarding his work assignments at LCF. As noted earlier, it is not a proper Motion to Amend, and added no claims or parties to this action. If plaintiff wishes to proceed against either NCF or LCF officials based upon claims that he has been subjected to cruel and unusual punishment in work assignments and suffered work-related injuries, he must file a separate civil action naming proper defendants and alleging the facts upon which such claims are based.

In his "Reply" (Doc. 10) plaintiff mainly reargues his conclusory claims and alleges very few "additional facts". He does list "mail affected" as letters/documents sent to him from the State of Kansas, Chief of Police of Plainview, Nebraska, and this court. However, he again fails to provide the dates or content of these items, and other facts indicating that any named defendant censored or otherwise handled this mail in an unconstitutional manner. Nor does he allege facts showing actual injury resulted from the handling of these specific pieces of mail. See Wardell v. Duncan, 470 F.3d 954, 959 (10th Cir. 2006)(A prisoner asserting a claim for denial of access based on mishandling of mail must show that it resulted in actual injury). Plaintiff's allegations of having sent grievances regarding the handling of his mail to defendants Hrabe, Thibedeau, and others without satisfactory results are not facts supporting this claim.[24] Plaintiff has submitted numerous exhibits showing he filed grievances claiming his mail was mishandled. However, those grievances generally involved challenges to postage procedures[25], or to findings that he inappropriately marked outgoing mail as legal or official or misconstrued certain incoming mail as legal or official. For example, plaintiff repeatedly challenged the inspection of mail to his father which he had marked legal mail, on

_____

[24] Plaintiff's allegations that his boxes of legal materials were searched during cell shakedowns, standing alone, do not support his claim that his legal mail was mishandled. He has not described legal mail in the boxes at the time or any actual resulting injury that "hindered his efforts to pursue a legal claim." Lewis v. Casey, 518 U.S. 343, 351 (1996).

[25] An inmate has no right to unlimited free postage. See Berger v. White, 12 Fed.Appx. 768, 771 (10th Cir. 2001)("[P]risoners need not be provided 'with an unlimited right to free postage in connection with the right of access to the courts'," and "[r]easonable regulations are necessary to balance the rights of prisoners with budgetary considerations.")(citing Twyman v. Crisp, 584 F.2d 352, 359 (10th Cir. 1978)(citations omitted)). Thus, it can hardly be seriously argued that an inmate has a constitutional right to obtain postage through an account withdrawal procedure, rather than by having to purchase and affix stamps.

the theory that he was sending legal documents to his father who was acting as his legal intern.[26] He was referred to regulations that defined legal mail as that sent to courts or attorneys. Inspections of mail addressed to his father, particularly after he ignored regulations as to what constituted legal mail, accepted as true, do not evince a federal constitutional violation.[27] Thus, the "access-to-court aspect" of plaintiff's mail claims, as asserted by him, remains deficient. See Brown v. Saline County Jail, 303 Fed.Appx. 678, 682 (10th Cir. 2008).

In addition, Mr. Green has not addressed this court's finding upon screening that his mail claims are not properly joined with his Eight Amendment claims. He has thus failed to provide any justification for joining these completely unrelated claims in this single action. Moreover, the defendants alleged to have participated in Mr. Green's medical treatment are not alleged to have taken part in any mail handling incident. Plaintiff's claims of mail interference are dismissed from this action, without prejudice. This does not mean that plaintiff is prohibited from litigating these claims. However, to do so he must file a separate civil action on court-provided forms in which he alleges sufficient facts to support denial of court access and/or First Amendment

---

[26] Prison officials may open and inspect non-legal mail in the interest of security. See Wolff v. McDonnell, 418 U.S. 539, 576-577 (1974); Wardell, 470 F.3d at 959 FN4 ("Here, we are not dealing with 'legal mail,' in the sense of correspondence with courts or counsel, but only with private mail enclosing materials of a legal nature.").

[27] Plaintiff has alleged only that his mail was opened and inspected. He does not allege facts showing that inspection interfered with his communication with counsel or the courts. Maschner, 899 F.2d at 944 (citing see LeVier v. Woodson, 443 F.2d 360, 361 (10th Cir. 1971)); Berger, 12 Fed.Appx. At 771 ("Isolated incidents of opening constitutionally protected legal mail, 'without any evidence of improper motive or resulting interference with [plaintiff's] right to counsel or access to the courts,' do not support a civil rights claim.")(citing Maschner, 899 F.2d at 944).

claims, and names as defendants only those persons who personally participated in the alleged mishandling of his mail.

**DENIAL OF ACCESS CLAIM**

With regard to plaintiff's separate ground of denial of access to the courts, the court found in its screening order that he alleged no facts whatsoever in support and, in particular, had not alleged facts showing the essential element of actual injury. The court further found that plaintiff had not described the personal participation of any defendant in an act that denied him access. See Montana v. Hargett, 151 Fed.Appx. 633, 636 (10th Cir. 2005)(Claim based on alleged loss of legal materials must fail because plaintiff did not assert this claim against particular defendants.).

In his Reply, plaintiff alleges that he filed a grievance in December, 2007, complaining that defendant Thibedeau "refused to mail" four grievances to Topeka "for appeal purposes". He makes the conclusory statement that Thibedeau and nonparties "intentionally blocked these 'legal documents' from leaving the facility" because they did not want them reviewed by the Central Office in Topeka. The court is not convinced by plaintiff's characterization that these were "legal documents;" nonetheless he is entitled to mail out official documents. However, plaintiff exhibits two relevant grievances from December, 2007. One indicates that Thibedeau would not allow him to "take the postage off of (his) account through the Acct. Withdrawal Request Form" and required instead that he purchase and use stamps. Even though plaintiff complained it was "impossible to know ahead of time" how much postage was needed, he elsewhere exhibits regulations explaining how mailings may be weighed in

advance. In the other grievance, plaintiff claimed that Thibedeau had tampered with "every piece" of his mail, but stated only that she refused to mail his grievance to Werholtz because he "did not have enough stamps" and she "refused to approve (his) AWR form." Thus, the facts provided by plaintiff, as opposed to his conclusory assertions, fail to state a federal constitutional claim. Furthermore, plaintiff fails to show that any court case was actually impeded as a result of these incidents. Plaintiff's other general allegations that his "legal letters" to defendant Werholtz and other state and federal officials were the subject of mail tampering remain conclusory,[28] and no actual injury is alleged. In plaintiff's Reply (Doc. 10), he described another incident. He alleged that at Thanksgiving 2007, he was unable to respond to a proposed journal entry in a child custody case (No. 96cv15932) "due to NCF tampering of this inbound legal document, and refusing to mail out his reply in a timely manner, missing a due date." He claimed this resulted in his ex-wife gaining "full decision making power over their child in a fraudulently created Journal Entry." In his Fifth Supplement he alleges he was prevented from responding in a timely manner by "NCF mailroom staff" failing to give him the proposed journal entry "for over a week". Plaintiff's attached grievance dated December 11, 2007, indicates he attempted to send

---

[28] While "[c]orrespondence between a prisoner and an outsider implicates the guarantee of freedom of speech," <u>Treff v. Galetka</u>, 74 F.3d 191, 194 (10th Cir. 1996), the control of mail to and from prisoners is a "necessary adjunct" to penal administration. <u>Gandy v. Ortiz</u>, 122 Fed.Appx. 421, 422 (10th Cir. 2005)(citing <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 407-08 (1989))(acknowledging that prison officials are better equipped than the judiciary to deal with the security implications of interactions between prisoners and the outside world); <u>U.S. v. Gordon</u>, 168 F.3d 1222, 1228 (10th Cir. 1999)("In the case of unprivileged incoming and outgoing mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene.")).

"an important child custody motion for case No. 96cv15932" to his father for his father to file[29], and claimed denial of access. The administrative response was that the item did "not meet criteria for legal mail thus using an AWR for processing (was) not correct," and had been weighed so he would know the amount of postage to affix. The official responding had even checked that Mr. Green had sufficient funds in his inmate account. The court again finds that plaintiff's own additional factual allegations and exhibits accepted as true, as opposed to his mere conclusory assertions, fail to state a constitutional claim of denial of access. His other general claims that his legal mail was improperly opened remain conclusory[30], and are similarly discredited by his own exhibits.

The court has found that the "additional facts" provided by plaintiff in support of his denial-of-access claim are inadequate, but dismisses this claim without prejudice. Mr. Green has not provided any justification for joining his denial of court access claim with his unrelated Eighth Amendment claims.

Plaintiff's claims that his legal materials in his cell were searched, read, and downsized while he was at the NCF may be analyzed under the First Amendment as a denial of free expression or

---

[29] Mr. Green has obviously submitted an enormous number of grievances to prison officials, and he has freely submitted a large number of those as exhibits in this case despite the court advising that his doing so was inappropriate until he is required to prove his case. Attachments submitted with pleadings may be considered as a part of the pleadings.

[30] See Florez v. Johnson, 63 Fed.Appx. 432, 437 (10th Cir. 2003)(The district court was correct to dismiss censorship claim where plaintiff made no specific factual allegations in support; ie., did not state when the censorship began, who engaged in the censorship, for what purpose, or to what extent; did not allege that any particular piece of mail was censored; and did not allege any connection between the defendants and the alleged mail censorship.).

as a denial of court access claim.[31]  Either way, this claim is likewise not properly joined with plaintiff's Eighth Amendment claims of denial of medical treatment, and the defendants involved in his treatment, who shall be required to answer the complaint, are not alleged to have taken part in any search of his cell.[32]  This claim is also dismissed without prejudice.

Plaintiff is not prevented by this Order from litigating any of his denial of access claims, but to do so he must file a separate civil action on court-provided forms in which he alleges sufficient facts in support and names as defendants only those persons who personally participated.[33]

---

[31]     Plaintiff has not described by content and intended recipient a single pleading that he attempted to send to a court or a piece of actual legal correspondence sent to his attorney or to a court, and alleged the date it was "tampered with", the name of the individual who tampered with it, circumstances that indicate unconstitutional action by that actor, and actual injury to a particular legal case that resulted.  His conclusory allegations, no matter how numerous and oft-repeated, are not sufficient to show a denial of access.

[32]     Despite previously being ordered to allege facts showing the personal participation of each defendant, Mr. Green does not allege that any named defendant actually read his legal materials during a search or directed another to do so.  The only defendant whose name is linked with this claim is Ms. Thibedeau.  Plaintiff alleges Thibedeau had two-thirds of his legal files removed from his cell "to be destroyed".  However, he provides no date, does not allege he had no option to send the materials elsewhere, does not describe the removed materials, and does not allege circumstances suggesting Thibedeau was acting other than in accord with regulations limiting legal materials to a single box.  Nor does he allege any actual injury.  The several cell inspection forms and grievances he exhibits do not mention Thibedeau or include her signature.  Those implicated are "cellhouse SGT's".

[33]     The court does not mean to suggest that the facts alleged by plaintiff state a viable claim under § 1983, or to encourage him to file new lawsuits based on the same deficient facts.  The right of access to the courts, like other constitutional rights retained by inmates, may be limited by reasonable restrictions which further goals of institutional security.  Bell v. Wolfish, 441 U.S. 520, 546-47 (1979).  To further such goals and for the prevention of fire and safety hazards, prison officials may limit inmates' accumulation of personal property, including legal materials.  See, e.g., Green, 977 F.2d at 1390 (upholding cell storage of legal material to two cubic feet); United States v. Robinson, 913 F.2d 712, 717 (9th Cir. 1990), cert. denied, 498 U.S. 1104 (1991)(inmate limited to one box of legal materials in cell, other materials held in storage).  A prisoner can harbor no reasonable expectation of privacy in his cell nor in items stored in the cell.  Hudson v. Palmer, 468 U.S. 517 (1984).  Consequently, the Fourth Amendment does not protect prisoners from warrantless searches of their cells or from seizure of items found therein.  In addition, prisoners have no absolute due process right to observe searches of their cells.  Block v. Rutherford, 468 U.S. 576, 590-91 (1984) (Due Process Clause not violated

**MISHANDLING OF GRIEVANCES CLAIM**

With regard to plaintiff's claims that defendants lost, failed to return, or refused to respond to his grievances and "written complaints" to various officials, the court found they are based upon provisions of state laws or regulations and, as such, fail to state a federal constitutional claim. The court additionally found that since there is no entitlement to a prison grievance process under the Federal Constitution, plaintiff's complaints regarding the handling of his grievances stated no cognizable claim under § 1983. In his Reply, plaintiff simply disagrees with the court's holding. He argues that he has a constitutional right to file administrative grievances and appeals because it is part of the process before filing a civil action.

The court reiterates that the First Amendment protects a prisoner's right of access to the courts and to petition the government for redress of grievances. However, inmate grievance programs created by state law are not required by the U.S. Constitution and, as a consequence, allegations that prison officials failed to adhere to those procedures do not give rise to a cognizable federal constitutional claim. Plaintiff must pursue a claim of violation of state law in state rather than federal court. If prison officials improperly ignore a grievance that raises constitutional claims, the inmate's right to petition the government for redress of those claims is the right of access to the courts.

---

by rule prohibiting inmate's observation of his cell search). Plaintiff's allegations appear to indicate he was allowed to watch searches of his legal materials. Even though plaintiff states that he is actively engaged in litigation, he does not explain how the removal of part of his legal materials selected by him has caused him to miss any deadlines or otherwise prejudiced his ability to conduct litigation.

See <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991). Mr. Green describes no instance in which he was denied the right to pursue a constitutional claim in a court due solely to his inability, as opposed to his failure, to exhaust prison administrative remedies. Thus, his allegations that defendants have failed to "properly" process his grievances, taken as true, do not state a claim for damages under § 1983.

Plaintiff's additional allegations in his Reply that some defendants and nonparties have "refused to sign, return or respond to" some of his grievances likewise fail to support a claim of federal constitutional violation.[34] His own exhibits show he filed repetitive and recalcitrant grievances and was informed on more than one occasion that should he file additional grievances which were not substantially different, there would be no further response. No federal constitutional violation arises when prison officials decline to continuously respond to repetitive, vexatious grievances.

Plaintiff assertions against defendants Governor Sebelius, SOC officials Werholtz, Simmons, and Rice, and Warden Shelton are at most allegations that these officials did not provide relief in response to his administrative grievance appeals and written "complaints". An official's affirmation on administrative appeal of acts taken by another individual is not the type of direct personal

---

[34] Plaintiff's self-serving characterizations of his exhibits are often not borne out by those exhibits. For example, he exhibits a letter he wrote to Werholtz on January 22, 2008, and alleges it contains "facts of over 20 different" grievance forms which defendants Shelton, Hrabe, Thibedeau and others refused to sign, respond to, or return. However, the exhibit attached to Doc. 10 does not establish that these individuals improperly refused to sign or respond to any of plaintiff's grievances or that grievances were not returned. In any event, an inmate should retain copies of his own grievances. No constitutional claim is presented by the allegation that prison regulations were violated by a failure to return grievances.

involvement in unconstitutional acts required to state a constitutional claim under § 1983. The court concludes that plaintiff has not alleged facts to show sufficient personal participation by these individuals in his Eighth Amendment claims, and they shall be dismissed from this action as a result.

## FIRST AMENDMENT CLAIM

Plaintiff asserted as a violation of the First Amendment that he made a DVD for his daughter, but was prohibited from mailing it to her, and that his attempts to mail it to his father were blocked. His exhibits show he was notified that "the DVD did not meet the court order limiting (him) to send a single letter or card per month to your daughter", he requested and received a refund for the video, and he declined the opportunity to make another holiday video (Doc. 18 at 42). The facts provided to support this claim, taken as true, do not evince a First Amendment violation. In any event, plaintiff does not allege personal participation on the part of any named defendant in this event[35], and this claim is not related to plaintiff's Eighth Amendment denial of medical treatment claims. Consequently, this claim is not properly joined in this action. If Mr. Green wishes to pursue this First Amendment claim and can state sufficient facts in support, he must do so in a separate civil rights action on court-provided forms in which he names as defendant(s) only those persons who actually participated in the alleged censorship.

---

[35] Plaintiff's statement in his Fourth Supplement (Doc. 18) on page 41 that the person who spoke with him regarding this DVD "was CMI Jim Collins, who will be added as a defendant in this case" is not a proper Motion to Amend, and did not add a party to this case.

**ALLEGATIONS OF RETALIATION**

Plaintiff did not include a retaliation claim as one of the five grounds set forth in his complaint, but included some bald statements of retaliation in discussing his grounds. As noted, he attempted to "add" a retaliation claim on a page in his Fourth Supplement. Even if plaintiff were allowed to amend to add a retaliation claim, he has not stated sufficient facts in support.

Prison officials may not retaliate against a prisoner because he exercises his constitutional rights. See Maschner, 899 F.2d at 947. To state a claim of retaliation, a plaintiff must plead facts indicating that he can plausibly prove three elements at trial: (1) he engaged in constitutionally protected activity; (2) an adverse action was taken by defendants 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights'; and (3) the defendants' actions were substantially motivated by the plaintiff's protected activity. See Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007). As to the critical third element, a plaintiff must allege facts showing that retaliation was the animus behind the defendants' actions, i.e., that "but for" a desire to retaliate, the defendants would not have acted as they did. Peterson, 149 F.3d at 1144 ("[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, . . . would not have taken place."); Smith, 899 F.2d at 949-50. Thus, "it is imperative that [a] plaintiff's pleading be factual and not conclusory." Frazier, 922 F.2d at 562 FN1.

In his complaint, plaintiff alleged that defendant UTM Thibedeau "refused to sign grievances, then lost the same grievance she refused to sign and retaliated" by "firing" him from an "inside

wheel chair repair" job "to punish him by placing him on an outside work crew forcing him to chip ice/shovel snow" at 4 a.m., knowing "he had severe arthritis, low back pain, prior hernia surgery and an untreated prostate problem." As discussed earlier, he also has alleged that Thibedeau had two-thirds of his legal mail materials taken from his cell "to be destroyed".[36] He made the additional conclusory statement that Thibedeau was "involved in the process to "cut off" his prostate medication, but alleged no facts to suggest how. The court found plaintiff's allegations of retaliation by Thibedeau did not support his grounds, were conclusory despite the court's recent advice that he must allege specific facts, and did not appear to be properly joined in this action.

In his Reply (Doc. 10), plaintiff alleges Thibedeau fired him from his job at Wheels for the World "immed. the same morning that he attempted to file a grievance vs Thibedeau to the Class Mgr. Peterson." However, he does not reveal what the grievance concerned, or other facts from which this court might plausibly infer that defendant Thibedeau would not have fired him but for a retaliatory motive.[37] Nor, as found earlier, has he alleged facts showing Thibedeau interfered with his mail, other than by requiring his adherence to mail regulations. In any event, the court finds

---

[36] Plaintiff's other filings indicate he objected to this removal claiming Thibedeau acted without the Warden's approval, based on his self-serving interpretation of another grievance response as providing that legal materials would never be removed from his cell without the warden's approval. Mr. Green ignores regulations limiting for all inmates the amount of legal materials that can be retained in a cell.

[37] In an attached letter to defendant Rice, he mentions that on January 7, 2008, he grieved that his "firing from 'Wheels for the World' was unexplained, without merit", violated due process, and "was in retaliation for filing the Jan. 4th 08 grievance vs her and UT Collins." Plaintiff has no constitutional right to prison employment, more less assignment to a particular job or only one he finds agreeable.

that plaintiff's allegations of having been fired, "written a false DR", and subjected to other acts of retaliation by defendant Thibedeau for "attempting to" file a grievance against her must be dismissed from this action, without prejudice. Plaintiff has not shown that these allegations are related to his claims of denial of medical treatment. In order to pursue these claims against Thibedeau, plaintiff must file a separate civil action naming as defendant(s) only those person(s) alleged to have participated in these particular events.

## ALLEGATIONS OF WORK-RELATED INJURIES

In his Fourth Supplement, plaintiff alleges that "forced inhumane labor" on outdoor snow removal and work crews in extremely cold weather in November and December 2009, resulted in several physical injuries. He further alleges that those responsible are persons at LCF who allegedly ignored his medical conditions and work restrictions, which he claims should have been in place given his physical condition. In an attachment to Doc. 16 (that appears to be a copy of extra pages to a written grievance dated December 3, 2009), plaintiff listed his "Outside Work Crew Injury History" as in March, 2008, his right knee was injured at the NCF; in November, 2008, his lower back was injured at the LCF; and in 2009 his hand, back, knee and face were injured at various times at the LCF. He states that "each injury" is spelled out in his five motions copied into this action.

The court finds that these allegations are not responsive to the court's prior Order, and claims of work-related injuries have not been included in this action by proper amendment. Nor are the

persons whose acts allegedly resulted in these injuries defendants named in plaintiff's first amended complaint. In any event, Mr. Green has alleged insufficient facts showing any connection between his alleged work-related injuries and his claims of denial of medical treatment[38]. Accordingly, these allegations are dismissed without prejudice.


## EIGHTH AMENDMENT CLAIMS

The court finds the following relevant facts are alleged by plaintiff either in his complaint and Supplements or provided in his voluminous exhibits attached to those pleadings. These findings are for complaint-screening purposes only, and are not meant as any sort of limitation.

Mr. Green was diagnosed years ago, prior to his incarceration, with arthritis and a chronic prostate condition. Prior to 2005, his personal physician, Dr. Feder, had successfully treated him with Proscar for prostate, and Androgel for arthritis.

In December, 2005, Mr. Green was sentenced in Johnson County District Court, and initially confined in the Johnson County Adult Detention Center. He was assigned to the El Dorado Correctional Facility (EDCF) in September, 2007, and placed on "Chronic Care". While there he filed a grievance claiming he was not being treated effectively because the EDCF health care practitioner had prescribed Cardura for his prostate in place of Proscar. The RDU supervisor answered his grievance as follows:

---

[38] While plaintiff stated at one point that he suffered work-related injuries due to lack of treatment for his arthritis, this singular statement was completely conclusory.

We have a formulary that we must follow indicating which
medications we are allowed to prescribe. Proscar is not
on that formulary, therefore you were prescribed the
comparable medication of Cardura. You were admitted (to
EDCF) on 092607, we received the order for the Cardura in
place of the Proscar at that time. According to the
county that is the only medication you were taking while
you were there. You were then seen for your physical exam
on 092807 at which time you were referred to our Health
Care Practitioner for your chronic care issues including
your prostate issue and arthritis. You also signed a
release . . . so that we could get your health history
information. On 100407 you were seen by Dr. Jones for
your chronic care issues. It was explained to you, again,
at that time that Proscar as well as the Androgel you were
using for your arthritis are not medications on our
formulary and, therefore, required special approval from
our State Medical Director in order to prescribe. Dr.
Jones submitted the request to our Medical for the Proscar
on that date. We received the approval for the Proscar on
101107 and you started receiving the Proscar on that date.
. . . You indicate in your grievance that you were having
"painful and counter productive side effects" from the
Cardura, however there is no documentation in your file
that you reported these side effects. If you were having
"painful" side effects you should have submitted a Medical
Request Form indicating that you were having pain and we
would have assessed this.

Motion to Amend (Doc. 2) Attach 1, at 10A-10B.

Plaintiff was moved to the Norton Correctional Facility in
October, 2007. There, he filed a grievance to Warden Shelton who
responded as follows:

. . . You indicate a desire for a particular medication
(Androgel) that has apparently been recommended or
prescribed for you by physicians prior to your admission
into KDOC custody. . . . CCS staff have indicated a
request was submitted to the Regional Medical Director for
approval of Androgel, but was disapproved. . . . It
appears CCS staff are taking appropriate steps to assess
your medical needs and develop an appropriate treatment
plan. Any medical care or treatment received prior to
entering KDOC custody is relevant to the extent CCS staff
receive records for review and compare them to current
medical assessments, lab results and treatment protocols.
It appears you have had access to medical staff who seem
to be addressing your needs in an appropriate manner. . .
.

Id. at 14. Plaintiff filed another grievance, to which Warden

Shelton responded:

> Your grievance stems from the fact your prescription for
> Proscar expired on 1/5/2008 and Cardura was ordered in its
> place. You . . . are asking to have Proscar reordered. .
> . . There will be no override (from this office) of the
> decision to order Cardura when the prescription for
> Proscar expired – trained medical staff make those
> decisions. If you experience side effects from any
> medication, you need to access the Clinic through
> established sick call procedures, which will allow staff
> to examine you, assess your needs, and take appropriate
> action. I understand you were seen 1/29/08 at the Clinic
> and a formulary exception for Proscar was requested. You
> were seen again on 2/4/08 by Dr. Messinger and the
> exception for the Proscar was resubmitted. You need to be
> patient until a decision has been made, and continue to
> take medications as prescribed. . . .

Id. at 15. Defendant CCS Regional Medical Director Dr. Lawhorn
ordered Cardura and Hytrin for treatment of plaintiff's conditions,
while he was under the care of Dr. Messinger from January 2008
through April 2008. Id. at 17. Plaintiff wrote several letters to
KDOC officials, and received the following response from defendant
Rice:

> . . . The Kansas Department of Corrections, Health Care
> Contract Consultant reviewed your medical care and made
> recommendations to Correct Care Solutions to place you on
> Proscar as you . . . previously were able to manage your
> prostate symptoms while on Proscar.

Id. at 18. In June 2008, plaintiff filed "Medical Request" to CCS
stating:

> Since my prostate medication Proscar was cancelled in
> January 08, I've had a split stream, constant stop-n-start
> urination, weak stream, soreness in the testical area,
> straining to go and insomnia. The symptoms get worse and
> more painful each week. I've been untreated for five full
> months. . . . Arthritis is also bad.

Id. at 21. Plaintiff alleges that eight different medical
practitioners have assessed "for only Proscar to treat BPH." He
also alleges that Dr. Lawhorn has refused to carry out the orders of
these "attending physicians." Suffice it to say that plaintiff has

provided sufficient additional allegations to raise fact issues as to whether or not those defendants who are alleged to have personally participated in his medical treatment, that is Dr. Lawhorn, Dr. Satchell, and Correct Care Solutions, have been deliberately indifferent to his serious medical needs. The court accordingly finds that proper processing of plaintiff's denial of medical treatment claims against these defendants cannot be achieved without additional information from appropriate officials of the Johnson County Adult Detention Facility. See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978); see also Hall, 935 F.2d at 1106.

IT IS THEREFORE ORDERED that Doc. 4 docketed as "Plaintiff's First Amended Complaint" is hereby stricken from the record in its entirety.

IT IS FURTHER ORDERED that the "First Amended Complaint" in this case is Doc. 1 and Doc. 2 combined, so that any party to answer this complaint must be served with and respond to Docs. 1 and 2 combined.

IT IS FURTHER ORDERED that all plaintiff's pending motions are denied (Docs. 5, 7, 8, 9, 12, 13), and all motions or requests imbedded in plaintiff's Motions (Docs. 5, 7, 8, 9, 12, 13) and in his Reply and Supplements (Docs. 10, 11, 13, 18, 19) are denied.

IT IS FURTHER ORDERED that all plaintiff's claims in his First Amended Complaint and elsewhere in his filings are dismissed, without prejudice, except his Eighth Amendment claims of denial of medical care.

IT IS FURTHER ORDERED that this action is dismissed as against all defendants except Correct Care Solutions, Dr. Charles D.

Lawhorn, and Dr. John Satchell.

**IT IS FURTHER ORDERED:**

(1) The clerk of the court shall prepare summons and waiver of service forms pursuant to Rule 4(d) of the Federal Rules of Procedure, to be served by a United States Marshal or a Deputy Marshal at no cost to plaintiff absent a subsequent finding by the court that plaintiff is able to pay such costs. The report required herein, shall be filed no later than sixty (60) days from the date of this order, and the answer shall be filed within twenty (20) days following the receipt of that report by counsel for defendant.

(2) Officials responsible for the operation of the Norton Correctional Facility and the Lansing Correctional Facility are directed to undertake a review of the subject matter of the complaint:

(a) to ascertain the facts and circumstances;

(b) to consider whether any action can and should be taken by the institution to resolve the subject matter of the complaint;

(C) to determine whether other like complaints, whether pending in this court or elsewhere, are related to this complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be attached to and filed with the defendants' answer or response to the complaint. Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any tapes of the incident underlying plaintiff's claims shall also

be included.

(4) Authorization is granted to the officials of the Kansas Department of Corrections to interview all witnesses having knowledge of the facts, including the plaintiff.

(5) No answer or motion addressed to the complaint shall be filed until the Martinez report requested herein has been prepared.

(6) Discovery by plaintiff shall not commence until plaintiff has received and reviewed defendants' answer or response to the complaint and the report required herein. This action is exempted from the requirements imposed under F.R.C.P. 26(a) and 26(f).

Copies of this Order shall be transmitted to plaintiff, to defendants, to the Secretary of Corrections, and to the Attorney General of the State of Kansas.

**IT IS FURTHER ORDERED** the clerk of the court shall enter the Kansas Department of Corrections as an interested party on the docket for the limited purpose of preparing the Martinez report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action.

The clerk is directed to send IFP forms to plaintiff.

The filing of an Interlocutory Appeal of this Order is discouraged, and any such appeal would not be certified by this court.

**IT IS SO ORDERED**.

Dated this 30th day of March, 2010, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge