IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CHARLES D. GREEN,

                    Plaintiff,

          v.                         CASE NO.  09-3055-SAC

CHARLTON D. LAWHORN,
CCS Regional Medical
Director, et al.,

                    Defendants.

### MEMORANDUM AND ORDER

        This is a civil rights complaint, 42 U.S.C. § 1983, filed by
Mr. Green while he was a state prisoner.  In a prior Memorandum and
Order, the court dismissed all plaintiff's claims except that of
denial of medical care under the Eighth Amendment.  The court also
dismissed all defendants except Correct Care Solutions (CCS), Dr.
Charles Lawhorn, and Dr. John Satchell.  Summons issued and was
returned executed as to defendant CCS.  On April 9, 2010, waiver of
service of summons forms were mailed first class to defendants
Lawhorn and Satchell.

        The matter is before the court on the following motions:

        Doc. 49, 52: motions of defendant Interested Party Kansas
Department of Corrections (KDOC) for extensions of time to file the
Martinez Report;

        Doc. 51: plaintiff's motion to clarify status and to cease all
action in this case until February 11, 2011;

        Doc. 56: motion of defendant CCS to dismiss, or in the
alternative, for summary judgment;

        Doc. 57: motion of defendant CCS for more definite statement;

Docs. 60, 65: plaintiff's motion to proceed to discovery and motions to proceed to trial;

Doc. 60: plaintiff's motion for summary judgment;

Docs. 60, 63, 66: plaintiff's motions to enforce orders; and

Doc. 61: defendant Lawhorn's motion for judgment on the pleadings.

Having considered these motions, supportive memoranda, responses to the motions, the Martinez Report and attachments and plaintiff's objections thereto, and the case file together with the relevant legal authorities, the court makes the following findings and rulings.

**NON-DISPOSITIVE MOTIONS**

Defendants' motions for extension of time to file the Martinez Report (Docs. 49, 52) are granted to and including the date on which the Martinez report was filed.

Plaintiff's motion to clarify status, to include "events still occurring" as part of the Martinez Report, and to cease all action in this case until February 11, 2011 (Doc. 51) is denied. Plaintiff does not specify what clarification he seeks. His own allegations and his contacts with court personnel before and after his release on parole on August 6, 2010, indicate he was capable of remaining fully cognizant of the status of this case. Plaintiff alleges that on August 30, 2010, he was taken into custody on technical parole violations and confined at the Johnson County Adult Detention Center

until September 8, when he was moved to LCF.[1]  On October 20, 2010, Mr. Green filed a projected notice of change of address from the LCF to an outside address, which he said would take effect in December 2010.  Also on October 20, he filed the instant motion asking the court to cease all action in this case until February 11, 2011, "giving him time to access his case files" and research materials. He alleged that he had returned to prison "with nothing," and claimed that "emergency new circumstances" made it impossible for him to "effectively participate as a litigant in this case until he is released from custody, finds a place to live, and settles into the community."  These allegations do not present adequate factual or legal basis or exceptional circumstances for granting a stay of these proceedings.  In any event, his request for this limited stay is now moot.  Plaintiff's attempts to add "still occurring" claims or allegations simply by including them in this motion are of no effect.  Plaintiff has repeatedly been instructed that he must file a Motion to Amend together with a complete Amended Complaint in order to add any claim.  See Order (Doc. 3) at 2; Order (Doc. 20) at 20-21.

KDOC has filed a Martinez Report (Doc. 53) as directed by the court.  Plaintiff has filed responses to the Report (Docs. 59, 66) in which he challenges its accuracy and claims that it is not in compliance with the court's order requiring the Report.[2]  Defendant

---

[1]      Plaintiff further alleges that on September 7, he was authorized to receive his Proscar at the Johnson County facility; that he had a complete physical at the LCF; and that on September 21, he was seen by defendant Dr. Satchell who ordered Hytrin.

[2]      For example, plaintiff complains that he was not served with the records attached to the Martinez Report.  That problem in this case was remedied by the clerk forwarding those records to plaintiff at the court's direction.  When a party files documents that it does not want provided to another party in the

CCS has filed a reply (Doc. 63) to plaintiff's response. Mr. Green's general disagreement with some statements[3] in the Martinez Report and disappointment with the accompanying record do not entitle him to relief with respect to the Report. Nor do they amount to adequate refutation of any information in the Report. If plaintiff knows of other more favorable evidence he is free to produce it at the appropriate time.

The alternative motion of defendant CCS for a more definite statement (Doc. 57) will be denied as moot.

In plaintiff's motions to enforce orders included within his responses and his motion for summary judgment (Docs. 60, 63, 66),[4] he asks the court to order defendants to comply with the court's prior order requiring the preparation of the Martinez Report. These motions are denied because, contrary to plaintiff's assertion, the Martinez Report is in substantial compliance with this court's order. His allegations in this motion do not establish otherwise.

Plaintiff's motions to proceed to trial and discovery (Docs. 60, 65) are nothing more than blanket requests unaccompanied by authority or factual basis. They are denied, without prejudice.

---

case, it must submit a separate motion that states legal authority and factual grounds. KDOC's "imbedded" request for in camera inspection attached to the Report with numerous other exhibits was not sufficient to alert the court to this request prior to the materials being filed upon the public record. Absent sufficient grounds stated in a proper motion and a prior court order, any materials submitted for filing in a case by either party must be served upon the other parties in the case.

[3] Plaintiff exaggerates when labeling statements made in the report as "untrue, dishonest, and misleading." For example, Mr. Green did in fact ask the court to order that defendants provide him with certain medication. Now that he is no longer in KDOC custody this request for injunctive relief is moot. This does not make the opposing party's statement that Mr. Green requested this relief untrue.

[4] Plaintiff was directed early in this litigation to file separate motions for each different kind of relief he sought from the court. He continues to ignore this directive.

**DISPOSITIVE MOTIONS**

***Motion of defendant CCS to dismiss, or in the alternative, for summary judgment.***

Defendant Correct Care Solutions (CCS) has filed a motion to dismiss or, in the alternative, for summary judgment combined with Memorandum in Support (Doc. 56). Defendant CCS seeks dismissal under Rule 12(b)(1), Rule 12(b)(6), and Rule 56 of the Federal Rules of Civil Procedure. The grounds asserted for dismissal are: (1) that plaintiff has failed to exhaust administrative remedies on his claim against CCS, and (2) that plaintiff has failed to state a claim upon which relief can be granted as to CCS.

The motion/memorandum of defendant CCS does not fully comply with D.Kan.Rule 56.1(a),[5] in that CCS has not presented its facts in numbered paragraphs. Nevertheless, defendant CCS has set forth the essential elements of a motion for summary judgment with statements of material facts and specific references in support.

Defendant's dispositive motion was filed on December 17, 2010. D.Kan.Rule 6.1(d) provides in pertinent part:

> Time for filing of Responses. Unless the court orders otherwise, the following time periods apply to the filing of responses and replies. These time periods include the additional 3-day period allowed under Fed. R. Civ. P. 6(d) and, therefore, apply regardless of the method of service.

* * *

---

[5]    This court rule provides:

The memorandum or brief in support of a motion for summary judgment must begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which movant relies. All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

> (2) Dispositive motions.  Responses to motions
> to dismiss, motions for summary judgment, . . .
> or motions for judgment on the pleadings must
> be filed and served within 21 days.  Replies
> must be filed and served within 14 days of
> service of the response.

Mr. Green thus had twenty-one days from December 17, 2010, in which to file a response to this motion.  He filed no response within this time period.  Nor did he file a motion for extension of time to respond.  He filed responses after the time expired.  On February 28, 2011, he filed a response to the Martinez Report (Doc. 59) together with his own Motion for Summary Judgment (Doc. 60).[6]  On March 18, 2011, he filed a pleading (Doc. 66), which the clerk docketed as his response to the motion of CCS to dismiss, among other things.  In this pleading, Mr. Green states that his response to the dispositive motion of CCS was "embedded" in his response to the Martinez Report (Doc. 59).[7]  Even if these filings were properly formulated responses, none was timely.  D.Kan.Rule 7.4(b) provides:

> Absent a showing of excusable neglect, a party or attorney
> who fails to file a responsive brief or memorandum within
> the time specified in D. Kan. Rule 6.1(d) waives the right
> to later file such brief or memorandum.  If a responsive
> brief or memorandum is not filed within the Rule 6.1(d)
> time requirements, the court will consider and decide the
> motion as an uncontested motion.  Ordinary, the court will
> grant the motion without further notice.

In his response to the Martinez Report (Doc. 59), plaintiff complains, as noted, of his difficulty in obtaining the records attached to the Report for approximately a week and that the Report

---

[6]    Plaintiff improperly filed a single document, with a title indicating it was a response to the Martinez Report and plaintiff's own motion for summary judgment, among other things.  The clerk copied the document and docketed it as two separate pleadings.

[7]    Plaintiff was previously admonished that the court need not consider improperly "imbedded motions."  The court has often reminded Mr. Green that he is required to comply with procedural rules, and he has apprised the court that he is not uneducated.

is incomplete.  However, neither of these criticisms suggests a reason for failing to timely respond to the dispositive motion of CCS.  Nor does the fact that he had been returned to or released from prison establish excusable neglect.  Plaintiff knew of his impending release long before it occurred, he was notified of all actions taken in the case at addresses he provided, and he has managed to contact the court by telephone and in writing many times. He describes no circumstances during this time that prevented him from at least seeking an extension of time or from having "access to court documents."

The court concludes that Mr. Green waived the right to file a response to the dispositive motion of defendant CCS.[8]  Accordingly, this court need not consider Mr. Green's untimely responses in ruling upon this motion.  At the same time, the court recognizes that pro se litigants should not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion.  See Woods v. Roberts, 47 F.3d 1178, at *2 (10th Cir. Feb.17, 1995)(unpublished);[9] Hass v. U.S. Air Force, 848 F.Supp. 926, 929 (D.Kan. 1994).  The Court has therefore carefully reviewed all timely pleadings and the record properly before it to determine whether genuine issues of material fact preclude the entry of summary judgment.

In his "Response to the CCS 'Motion to Dismiss'" (Doc. 66), plaintiff states that his amended complaint was "supported by

---

[8]     The fact that plaintiff had filed a prior motion to cease activity that had not been granted did not excuse him from responding to a dispositive motion or at least seeking an extension of time.

[9]     Unpublished opinions are not cited herein as binding precedent, but for their persuasive value only in accord with Fed.R.App.P. 32.1 and 10th Cir.R. 32.1.

numerous 'supplemental motions'" that defendants have ignored. Neither defendant CCS nor the court is required to again wade through all plaintiff's allegations in his voluminous filings since his First Amended Complaint that were never presented in a proper amendment.[10]   Again, the court points out that Mr. Green was repeatedly informed that he could not add parties or claims by simply filing a motion, and that he could only do so by filing a complete amended complaint that complied with the Federal Rules of Civil Procedure.   Defendants have properly based their dispositive motion upon plaintiff's First Amended Complaint.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.R.Civ.P. 56(a); Celotex Corp. v. Cattrett, 477 U.S. 317, 322 (1986).   A fact is "material" if it could reasonably affect the outcome of the action.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if the issue could be resolved in favor of

---

[10]     In the court's screening order, plaintiff was notified as follows:

Sufficient factual allegations to support plaintiff's claims should have been in his complaint, and not just in subsequent motions, which are neither supplements nor proper amendments to the complaint. Plaintiff is given the opportunity to allege additional facts in support of his claims, and may do so by filing a "Supplement to his Complaint." Facts not already included in the complaint, or added in a Supplement in response to this order, or by a proper Second Amended Complaint filed with leave of court, shall not be considered as alleged in support of plaintiff's claims.

Order (Doc. 3), pg. 18 n. 19 (Apr. 24, 2009). Mr. Green "filed two timely (Docs. 10 & 11) and three untimely (Docs. 13, 18, 19) Supplements or responses." Order (Doc. 20), pg. 21 (March 30, 2010). These responses totaling over 500 pages were improper and abusive. The court considered all these submissions even though many were beyond "supplements." However, it did so only to determine whether or not plaintiff could allege additional supporting facts for the five claims in his First Amended Complaint to survive screening. In addition, though not obliged to do so, it considered fact allegations made in motions he filed prior to this Order. The court then decided that plaintiff's First Amended Complaint should not be dismissed upon screening. No "supplement" or motion was construed by the court as an Amended Complaint, and plaintiff filed no Second Amended Complaint. Id. at 22.

either party.  Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court must view all evidence in the light most favorable to the opposing party. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).

As noted, a Martinez Report was filed in this case.  The court has considered the Martinez Report in evaluating the dispositive motion of defendant CCS, and therefore has resolved the motion under this defendant's request for summary judgment.  In pro se prisoner litigation, the Tenth Circuit endorses the ordering of a "Martinez report" where corrections officials undertake an investigation of the events at issue and construct an administrative record from that investigation.  See Martinez v. Aaron, 570 F.2d 317, 319 (10th Cir. 1978).  The purpose of a Martinez report is to "develop a record sufficient to ascertain whether there are any factual or legal bases for the prisoner's claims."  Breedlove v. Costner, 405 Fed.Appx. 338, 343 (10th Cir. 2010)(unpublished), cert. denied, 131 S.Ct. 2162 (2011)(citing Hall, 935 F.2d at 1109).  A Martinez report is treated like an affidavit.  The court does not, however, accept the factual findings from the prison investigation in the Report when plaintiff has presented conflicting evidence.  Id. (citing Northington v. Jackson, 973 F.2d 1518, 1521 (10th Cir. 1992); Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997).  The Court likewise treats the pro se prisoner's complaint, when sworn and made under penalty of perjury, as an affidavit.[11]

_____

[11]    Only plaintiff's original complaint that was submitted on forms (Doc. 1) is duly sworn.  Nevertheless, the court has considered the entire First Amended Complaint, that is (Doc. 1) and (Doc. 2) combined.  See Order (Doc. 3).

The following background facts are not in dispute. Plaintiff was an inmate at the NCF and the LCF at all relevant times. Defendant CCS is a legal entity doing business in the State of Kansas as a contract health care service provider and was responsible for providing health care to inmates at the NCF and the LCF. Mr. Green was taken into KDOC custody on September 27, 2007, and processed through the RDU at El Dorado Correctional Facility, El Dorado, Kansas (EDCF). He arrived at the NCF on or about October 29, 2007, and was moved to the LCF on April 15, 2008. He filed this action on March 11, 2009. He was first paroled from the LCF on August 6, 2010.

Plaintiff generally claims that defendant CCS denied necessary medical treatment to him in violation of the Eighth Amendment. Defendant CCS argues that the "only claim specifically against CCS" in plaintiff's First Amended Complaint "is that CCS does not allow the prescription of non-formulary medication." The court has reviewed the First Amended Complaint, that is Doc. 1 and Doc. 2 combined, and finds that Mr. Green's claim against CCS is based upon allegations that plaintiff was denied effective medical treatment in that he was denied the medications Proscar and AndroGel because they were non-formulary drugs.[12]

Defendant CCS first contends that plaintiff's claim against it is barred because Mr. Green failed to exhaust his administrative remedies on this claim as required by 42 U.S.C. § 1997e(a). Section 1997(e)(a) expressly mandates:

---

[12] Mr. Green has made many varying allegations in his numerous motions and filings, but the court considers only those made in a proper and complete amended complaint.

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any other
> Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative
> remedies as are available are exhausted.

Id.; Hines v. Sherron, 372 Fed.Appx. 853, 856 (10th Cir. 2010)(citing § 1997e(a)); see Jones v. Bock, 549 U.S. 199, 202 (2007). "This section requires a prisoner to exhaust all of his administrative remedies prior to filing a lawsuit." Id. (citing Porter v. Nussle, 534 U.S. 516, 524 (2002); Booth v. Churner, 532 U.S. 731, 741 (2001)). "The statutory exhaustion requirement of § 1997e(a) is mandatory, and the district court [i]s not authorized to dispense with it." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)(citing Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1167 FN 5 (10th Cir. 2003)(per curiam), cert. denied, 540 U.S. 1118 (2004)). In order to satisfy the exhaustion prerequisite a prisoner must "complete the administrative review process in accordance with the applicable procedural rules." Jones, 549 U.S. at 218 (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Substantial compliance is not sufficient. Thomas v. Parker, 609 F.3d 1114, 1118 (10th Cir. 2010), cert. denied, 131 S.Ct. 1691 (2011); Jernigan, 304 F.3d at 1032. Any claim that was not properly exhausted in full compliance with the prison's grievance process is barred and should be dismissed. Id. at 1031-33. In deciding this motion, the court has considered the administrative materials submitted by the parties. See Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1212 (10th Cir. 2003), abrogated in part on other grounds, Jones, 549 U.S. at 199.

Both NCF and LCF provide an administrative grievance process for inmates. Kansas Administrative Regulations (KS ADC) § 44-15-101 et seq., describes that four-step procedure. Under KS ADC §

44-15-101(b), before utilizing the grievance procedure, the inmate "shall be responsible for attempting to reach an informal resolution of the matter with the personnel who work with the inmate on a direct or daily basis. . . ."  Section 44-15-101(d) then provides several problem solving levels:

> (1) Level 1. The inmate shall first submit the grievance report form to an appropriate unit team member of the facility. . . .
>
> (2) Level 2. The inmate shall then submit the grievance report form to the warden of the facility. . . .
>
> (3) Level 3. If not resolved, the grievance may be next submitted to the office of the secretary of corrections. . . .

Id.

Defendant CCS alleges in support of its motion that, although plaintiff filed numerous grievances, he filed none that was fully appealed in which he complained that CCS improperly denied him medical treatment based upon a policy banning all non-formulary medications.  Even though in determining this unopposed motion the court is not required to consider any materials other than those submitted with the First Amended Complaint, it has also reviewed the exhibits of grievances submitted by Mr. Green throughout this case.[13] Mr. Green's exhibits consist of numerous form 9 grievances and other types of complaints addressed to various prison officials, many "Medical Requests" in which he complained, and a wide array of letters and complaints he sent to outside officials.  However, the exhibits provided by plaintiff do not include evidence that he first sought informal resolution and then submitted a timely grievance and

---

[13]    Plaintiff alleges that the Martinez Report fails to include favorable grievances and responses, but at the same time he states that such grievances are part of the court file already submitted by him.

orderly appeals through all steps of the established prison grievance process on the claim that CCS violated his constitutional right to medical care by improperly denying Proscar and Androgel based on policy that no non-formulary drugs would be provided. It is not simply that defendant CCS must have been named in plaintiff's grievances, since exhaustion does not require that each defendant was named in a grievance. Rather, plaintiff must have presented the allegation in his grievances that the denial of his previously prescribed medication was pursuant to an unconstitutional policy of the CCS. Once defendant CCS raised the affirmative defense of failure to exhaust, in order to avoid dismissal Mr. Green was required to provide copies of administrative grievances and dispositions or, in the absence of written documentation, describe with specificity his actions to complete each step of the proper administrative proceedings and the outcomes. Plaintiff's vague references to his prior filings in this case are not sufficient. Though plaintiff has indeed submitted to this court a large number of exhibits, even considering that many are duplicates, none of his first-level grievances stating he was being denied Proscar and AndroGel as non-formulary drugs are accompanied by copies of the requisite orderly appeals. The court has also independently reviewed the materials appended to the Martinez report and finds no such grievance filed by Mr. Green that was followed with proper and timely appeals.

The administrative grievances written by Mr. Green after his

complaint was filed[14] do not establish that he complied with the
mandate of § 1997e(a) by exhausting administrative remedies prior to
filing his complaint.  In sum, defendant CCS has presented evidence
that plaintiff had administrative remedies available but failed to
properly and fully exhaust those remedies on his claims against CCS.
Plaintiff has not presented sufficient contrary evidence.[15]  The
court finds from the record before it that plaintiff did not fully
and properly exhaust his administrative remedies prior to filing
this lawsuit on the claim raised in his complaint against defendant
CCS.[16]

Defendant CCS also argues that it is entitled to summary
judgment because plaintiff has failed to state a claim.  Plaintiff's
failure to exhaust alone is sufficient to support a grant of summary
judgment, and any additional grounds need not be considered.
Nonetheless, the court also finds that even if plaintiff fully and
properly exhausted, defendant CCS is entitled to summary judgment
based upon this additional ground.

In support of this ground, CCS makes two arguments.  First, it

---

[14]    Plaintiff attempts to rely upon a grievance that he "made directly
against CCS" dated August 21, 2009 as a basis for discounting their summary
judgment motion.

[15]    Plaintiff has complained of interference with the grievance process;
however, he has not alleged sufficient facts to show that he was actually
prevented from properly submitting grievances and processing appeals regarding the
alleged CCS policy.

[16]    Plaintiff complains that the Martinez Report fails to comment on acts
intended to derail his many complaints/grievances.  His allegations regarding the
alleged mishandling of his grievances were previously dismissed in this case.  It
is clear from Mr. Green's own exhibits that he was a prolific filer of grievances
and other forms of complaints while imprisoned.  His own voluminous exhibits do
not reflect that he submitted grievances in the proper form to the proper person
and followed through with the administrative process in an orderly fashion.  The
logical inference, in the face of his having exhibited so many grievances and some
over and over, is that he did not exhaust remedies in an orderly fashion.
Certainly, the record presented by Mr. Green does not engender suspicion that
prison officials are in possession of, but withholding, a record showing orderly
exhaustion of administrative remedies by Mr. Green.

contends that it cannot be held vicariously liable for the acts of the defendant physicians. To the extent that plaintiff brings his claims against CCS based upon the actions of its employees, the claims fail. In <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978), the Supreme Court held that a municipality cannot be held liable under § 1983 merely on account of the unauthorized acts of its agents. <u>Id.</u> at 691-94 (rejecting § 1983 claim based on respondeat superior theory). Courts have extended the <u>Monell</u> holding to § 1983 claims against private defendants. <u>See</u> <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1216 (10th Cir. 2003)(and cases cited therein). Therefore, corporate defendants such as CCS cannot be held vicariously liable under Section 1983 for the acts of their employees. <u>See</u> <u>Baker v. Simmons</u>, 65 Fed. Appx. 231, 234 (10th Cir. May 6, 2003)(unpublished)(citing <u>DeVargas v. Mason & Hangar-Silas Mason Co.</u>, 844 F.2d 714, 722 (10th Cir. 1988)); <u>Smedley v. Corrs. Corp. of Am.</u>, 175 Fed.Appx. 943, 946 (10th Cir. 2005)(unpublished)(§ 1983 claims against corporate defendants may not be premised on principles of respondeat superior); <u>Dickerson v. Leavitt Rentals</u>, 995 F.Supp. 1242, 1247 (D.Kan.), <u>aff'd</u>, 153 F.3d 726 (10th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1110 (1999); <u>Payne v. Werholtz</u>, 2007 WL 3273346, *3 n. 2 (D.Kan. Nov. 5, 2007)(unpublished). Thus, to succeed on his claim against CCS, plaintiff must allege and be able to prove that CCS caused a constitutional violation through an official policy or custom, which was the direct cause or moving force behind the constitutional violation. <u>See</u> <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480-85 (1986).

    In this case, neither plaintiff's allegations nor any evidence in the record establishes that an unconstitutional policy or custom

of CCS caused plaintiff to be denied necessary medical treatment. Defendant CCS alleges that they had no such policy, and that the record shows, to the contrary, that non-formulary medications could and in fact were at times provided by CCS to Mr. Green.  Plaintiff does not present evidence to refute these material allegations.

Defendant CCS additionally contends that, even if CCS could somehow be held liable, plaintiff has failed to state a claim.  They base this contention on the medical records produced with the Martinez report, which show that Mr. Green was frequently seen for his medical complaints, was provided with medications, and refused to comply with the treatment prescribed on a number of occasions. Movant makes specific references to the record in support.  The court's own review of the medical records and the case file reveals that these material facts are supported by the record.  Plaintiff does not present evidence to dispute these material facts.  He makes contrary arguments that are either conclusory or irrelevant.[17]  The court concludes that, even viewing all evidence and reasonable inferences therefrom in plaintiff's favor, Mr. Green has not alleged sufficient facts to establish liability on the part of CCS. Accordingly, the court finds that defendant CCS is entitled to summary judgment as a matter of law, and that plaintiff's § 1983 claim against CCS must be dismissed.

Finally, the court notes that other courts have dismissed prisoner claims of denial of medical treatment for failure to state a claim based upon medical records submitted with a Martinez Report

---

[17]     For example, plaintiff's argument that this court has already determined that his claim against CCS is valid based upon its screening order is incorrect.  The court found in its screening order only that a responsive pleading was required.

under the court's continuing duty to dismiss a prisoner's complaint against "a governmental entity or officer or an employee of a governmental entity" at any time it appears that plaintiff has failed to state a federal constitutional claim.  <u>See</u> 28 U.S.C. § 1915A(b)(1); <u>cf.</u> 28 U.S.C. § 1915(e)(2)(B)(ii)( "Notwithstanding any filing fee,[18] or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted").[19]

### *Defendant Lawhorn's Motion for Judgment on the Pleadings*

Defendant Dr. Lawhorn has filed a Motion for Judgment on the Pleadings (Doc. 61) with a Memorandum in Support (Doc. 62). Plaintiff filed a timely Response to this motion (Doc. 64).  In support of this motion, Dr. Lawhorn cites Fed.R.Civ.P. 12(c)[20] and D.Kan. Rule 7.1.  As grounds for this motion, defendant Lawhorn alleges that the allegations in plaintiff's complaint, taken as true, do not state a claim for relief under § 1983 and the Eighth Amendment.   He also asserts that he is entitled to qualified immunity.

Plaintiff and defendant Lawhorn are hereby notified that

---

[18]    Mr. Green initiated this action by paying the filing fee in full.  He was a prisoner when the events occurred and when he filed the complaint.  He motioned for and was granted leave to proceed in forma pauperis in this action on April 9, 2010 (Doc. 21).

[19]    Assuming CCS had an established policy of avoiding the prescription of non-formulary medications without adequate testing for alternatives, no constitutional violation is stated.  A switch to less expensive generic medications is something faced by many members of today's society. Facts have not been alleged to show that the same policy applied to an inmate is repugnant to societal norms.

[20]    Rule 12(c) provides: "After the pleadings are closed--but early enough not to delay trial--party may move for judgment on the pleadings."

defendant Lawhorn's Motion for Judgment on the Pleadings is hereby treated by the court as a Motion for Summary Judgment under Fed.R.Civ.P. Rule 56.   Rule 12(d) provides:

> Result of Presenting Matters Outside the Pleadings.   If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.   All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

In connection with this motion, both defendant Lawhorn and plaintiff have referred to the medical records attached to the Martinez Report already received by the court.   However, in order for these medical records to be considered, this motion must be treated as one for summary judgment.

Defendant Lawhorn's motion is based upon the following arguments: that substitution of an alternative medication to Proscar for treatment of plaintiff's BPH and the decision not to treat plaintiff's arthritis with AndroGel were medical judgments made by Dr. Lawhorn; and that neither Mr. Green's disagreement with Dr. Lawhorn's medical judgment, nor a disagreement among medical providers, amounts to an Eighth Amendment claim for denial of medical treatment.[21]   Defendant also argues that plaintiff's own exhibits and the medical records provided with the Martinez Report plainly show that Mr. Green received medical treatment, which contradicts his conclusory allegations that Dr. Lawhorn deliberately ignored his conditions and refused him "any effective treatment," or that his arthritis and BPH went entirely untreated.   Thus, defendant Lawhorn argues, based on the facts in the First Amendment Complaint,

---

[21]   Thus, defendant also argues that the prong of qualified immunity analysis requiring the existence of a constitutional violation is not satisfied.

that the material facts are not in dispute and do not state a claim of violation of the cruel and unusual punishment clause of the Eighth Amendment.

The court has authority to sua sponte convert defendant's 12(c) motion to one for summary judgment. In doing so, the court finds that the following facts in the First Amended Complaint and attachments appear to be undisputed:

1.  Prior to plaintiff's confinement at the Johnson County Detention Center in 2005, his personal outside physician, Dr. Feder, had treated him for BPH and for hypogonadism and had prescribed Proscar and AndroGel. Complaint (Doc. 1) Attach. 6. The exhibited one-page medical history obtained from Dr. Feder does not mention arthritis. Id. However, plaintiff's allegation that he suffered from arthritis and that Dr. Feder treated his arthritis is not disputed.

2.  Plaintiff was taken into KDOC custody in September, 2007, and at all times relevant to this action was a KDOC inmate.

3.  Upon KDOC intake, at the RDU/EDCF plaintiff was provided a "battery" of medical tests including x-rays (for arthritis), blood panels and a complete physical, as well as testing regarding his mental condition. He was placed on Chronic Care, and a 90-day prescription for Proscar was provided. Id., Attach. 21;[22] Complaint (Doc. 2) Attach. 19.

4.  Mr. Green was transferred to the NCF, where he filed a grievance claiming he was not being treated effectively because the EDCF health care practitioner had prescribed Cardura for his

---

[22]   Where plaintiff has not clearly numbered his attachments, the court refers to them as if numbered sequentially page by page.

prostate in place of Proscar.    On October 17, 2007, the RDU
Supervisor answered his grievance as follows:

> . . . You were admitted (to EDCF) on 092607, we received
> the order for the Cardura in place of the Proscar at that
> time. . . .  You were then seen for your physical exam on
> 092807 at which time you were referred to our Health Care
> Practitioner for your chronic care issues including your
> prostate issue and arthritis.   You also signed a release
> . . . so that we could get your health history
> information.   On 100407 you were seen by Dr. Jones for
> your chronic care issues.  It was explained to you, again,
> at that time that Proscar as well as the Androgel you were
> using for your arthritis are not medications on our
> formulary and, therefore, required special approval from
> our State Medical Director in order to prescribe. Dr.
> Jones submitted the request to our Medical for the Proscar
> on that date. We received the approval for the Proscar on
> 101107 and you started receiving the Proscar on that date.
>
> . . . You indicate in your grievance that you were having
> "painful and counter productive side effects" from the
> Cardura, however there is no documentation in your file
> that you reported these side effects.  If you were having
> "painful" side effects you should have submitted a Medical
> Request Form indicating that you were having pain and we
> would have assessed this.

Complaint (Doc. 2) Attach. 14.

    5.  At the NCF, plaintiff filed a grievance to Warden Shelton
who responded in December 2007 as follows:

> . . . You indicate a desire for a particular medication
> (Androgel) that has apparently been recommended or
> prescribed for you by physicians prior to your admission
> into KDOC custody. . . .   CCS staff have indicated a
> request was submitted to the Regional Medical Director for
> approval of Androgel, but was disapproved. . . .   It
> appears CCS staff are taking appropriate steps to assess
> your medical needs and develop an appropriate treatment
> plan.   Any medical care or treatment received prior to
> entering KDOC custody is relevant to the extent CCS staff
> receive records for review and compare them to current
> medical assessments, lab results and treatment protocols.

Id. Attach. 19.

    6.  On January 4, 2008, defendant Lawhorn denied a request to
renew plaintiff's prescription to Proscar.  Complaint (Doc. 2) at 6.

    7.  Plaintiff filed another grievance at NCF, to which Warden

Shelton responded on February 11, 2008:

> Your grievance stems from the fact your prescription for
> Proscar expired on 1/5/2008 and Cardura was ordered in its
> place.  You . . . are asking to have Proscar reordered. .
> . .  There will be no override (from this office) of the
> decision to order Cardura when the prescription for
> Proscar expired – trained medical staff make those
> decisions.  If you experience side effects from any
> medication, you need to access the Clinic through
> established sick call procedures, which will allow staff
> to examine you, assess your needs, and take appropriate
> action.  I understand you were seen 1/29/08 at the Clinic
> and a formulary exception for Proscar was requested.  You
> were seen again on 2/4/08 by Dr. Messinger and the
> exception for the Proscar was resubmitted.  You need to be
> patient until a decision has been made, and continue to
> take medications as prescribed. . . .

Id. Attach. 20.

8.   Plaintiff was diagnosed with BPH and with arthritis while he was a KDOC inmate.  Some prison physicians that saw Mr. Green requested Proscar for treatment of his BPH.  However, Dr. Lawhorn, acting as the Regional Medical Director of CCS, denied these requests.

9.   Since January 4, 2008, when Dr. Lawhorn "cut off" Proscar, plaintiff was prescribed alternative medications for his BPH.  Complaint (Doc. 2) at 3.  He was seen by Dr. Messinger, who from January 2008 through April 2008, prescribed the alternative drugs Cardura and Hytrin for his BPH.  Id. Attach. 21.

10.  On April 17, 2008, two days after plaintiff was moved from NCF to LCF, he was examined by Dr. Satchell who prescribed Proscar. Id. Attach. 24.

11.  In June 2008, plaintiff submitted "Medical Request" to CCS stating:

> Since my prostate medication Proscar was cancelled in
> January 08, I've had a split stream, constant stop-n-start
> urination, weak stream, soreness in the testical area,
> straining to go and insomnia.  The symptoms get worse and

more painful each week. I've been untreated for five full
months. . . . Arthritis is also bad.

Id.  Attach. 27.

12.  On June 12, 2008, he also submitted a "Medical Request"
stating he was having pain from an arthritis flare up, and that his
arthritis was not being treated with any medication.  Id.  The
responses to both indicate he was quickly seen by Dr. Satchell.  Id.

13.  The claim before this court that plaintiff was denied
effective treatment of his BPH with Proscar thus covers January 4,
2008, through March 23, 2009, the date the second part of
plaintiff's complaint was filed.[23]

14.  Mr. Green was seen by as many as 8 different physicians
from the time he entered KDOC custody to the time he filed his First
Amended Complaint.  Complaint (Doc. 2) at 26.

15.  In June, 2008, Dr. Lawhorn visited plaintiff and informed
plaintiff that he wanted him to be thoroughly tested to find an
alternative, non-formulary, cheaper drug with which to treat his
BPH.  Complaint (Doc. 1) Attach. 26.

16.  Since July 2008, Dr. Satchell and KDOC had the one-page
medical record from Dr. Feder described above.  Id.

17.  The court takes judicial notice that the Physician's Desk
Reference provides that AndroGel is a topical hormone used to treat
low testerone and hypogonadism, and is counter-indicated for

_____

[23]      Plaintiff states in the second part of his complaint (Doc. 2) filed
March 23, 2009, that "this motion" contains "facts of events which occurred since
March 2nd, 2009," or during the 21 days following the filing of the first part of
his complaint.  The allegations in the actual pleading regarding Dr. Lawhorn are
completely conclusory, including plaintiff's statements that he has been "denied
effective medical treatment" for his arthritis for over 39 months and for his BPH
for 15 months.  Complaint (Doc. 2) at 9.  Plaintiff does make additional
allegations in the attachments to this pleading, which are reflected in the above
findings of undisputed facts.

patients with BPH.  Defendant's Motion (Doc. 62) Exhib. A.  See Purkey v. Green, 28 Fed.Appx. 736, 742, n. 4 (10th Cir. 2001)(unpublished).

18.  Plaintiff at times refused treatment with alternative drugs and refused to submit to testing for treatment with alternative drugs.  He filed complaints against Dr. Lawhorn and believed that it was against state law for Dr. Lawhorn to continue to treat him because he had filed the complaints.

As noted, defendant Lawhorn has also raised the affirmative defense of qualified immunity.  The first step in analyzing a qualified immunity defense is to determine whether the alleged conduct sets out a constitutional violation.  Smith v. Cochran, 339 F.3d 1205, 1211 (10th Cir. 2003).  The second step in the analysis of qualified immunity is to determine whether "the constitutional standards [were] clearly established at the time in question."  Id. Claims for deliberate indifference to serious medical needs of prisoners have long been recognized under the Eighth Amendment.  However, if the undisputed facts fail to set forth a claim of constitutional violation, it necessarily follows that defendant Lawhorn has a good affirmative defense of qualified immunity.  See Boles v. Neet, 486 F.3d 1177, 1180 (10th Cir. 2007).  Plaintiff must also sufficiently address this defense in order to successfully oppose defendant Lawhorn's summary judgment motion.

### Plaintiff's Memorandum in Opposition

In order to oppose defendant Lawhorn's summary judgment motion, plaintiff must file a "Memorandum in Opposition to Defendant Lawhorn's Motion for Summary Judgment."  D.Kan.Rule 56.1(b).  Mr. Green is notified that he may only file one such Memorandum and that

it is to include this title and no imbedded motions.   In this Memorandum, Mr. Green must "begin with a section containing a concise statement of material facts as to which (he) contends a genuine issue exists."   Each fact that plaintiff claims is in dispute must be numbered and "refer with particularity to those portions of the record upon which (plaintiff) relies."  If plaintiff disputes one of the numbered facts set forth in this Order, he must state the number of the above fact that is disputed; explain how it is disputed; and refer with particularity to the portion of the record that supports his version.   Plaintiff's references to the record must include the court's docket number, the title of the filing that contains the part of the record on which he relies, and the specific page number within that document.   Plaintiff is not to refer to or discuss any facts or exhibits that are not relevant to his Eighth Amendment claim against Dr. Lawhorn.

### *Movant's Reply*

The Reply Brief of movant defendant Lawhorn must respond to plaintiff's statement of additional facts as set forth in Rule 56.1(b)(1) and (c).   Both parties must abide by Subsection (d) of Rule 56.1, which provides:

> All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions.   Affidavits must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible in evidence.   Where facts referred to in an affidavit or declaration are contained in another document that is not already a part of the court file, a copy of the relevant document must be attached.

<u>Id.</u>  Plaintiff will be given thirty (30) days to file his Memorandum in Opposition to defendant Lawhorn's motion for summary judgment.

Defendant Lawhorn is given (30) days after his receipt of a copy of plaintiff's Memorandum in Opposition to file his Reply.

### *Motion of plaintiff for summary judgment*

Plaintiff has filed a Motion for Summary Judgment (Doc. 60), which is little more than a bald counter request for summary judgment.  Defendant CCS has filed a Response to this motion (Doc. 63).  In this motion, plaintiff does not present a set of material, undisputed facts that he then supports with specific references to the record.  He refers to the Martinez Report, but usually without specifying a particular page number and entry therein.  Nor does he present any convincing argument or legal authority to show that he is entitled to judgment as a matter of law based upon a set of undisputed facts.  Plaintiff's exhibit of a few records indicating he was prescribed Proscar and AndroGel at times does not establish that he was denied all medical treatment by Dr. Lawhorn while at the NCF and LCF or that Dr. Lawhorn was deliberately indifferent to his medical needs.  The court concludes that plaintiff fails to set forth material facts supporting his claims and show from the record that they are undisputed and fails to establish that he is entitled to judgment as a matter of law.  Accordingly, plaintiff's motion for summary judgment is denied.[24]

---

[24]    Again, plaintiff's Motion for Summary Judgment improperly includes other distinct motions: (1) motion for defendant to comply with court's Martinez Order, (2) motion to reconsider claims against dismissed defendants, (3) and motion to proceed this case to discovery phase and trial (Doc. 60).  Motions (1) and (3) are  denied for reasons already stated herein.  In motion (2), plaintiff attempts to re-argue claims that were previously dismissed in this case and asks the court to reconsider its prior rulings.  These imbedded arguments and request do not constitute a proper motion and will not be treated as such or considered further by the court.

**DEFENDANT DR. SATCHELL**

It appears from the court file that defendant Dr. John Satchell either did not receive or did not return[25] waiver forms that were sent to him by the U.S. Marshal in the first-class mail.[26]  There is no evidence in the record that defendant Satchell was personally served with the complaint in this action, and he has filed no responsive pleading.  Plaintiff did not call this matter to the court's attention, did not  request that the U.S. Marshal personally serve this defendant with summons, and has not asked for an extension of time to serve defendant Satchell.  It thus appears that this defendant was not effectively served within the time limit provided by Fed.R.Civ.P. 4(m), which is 120 days.[27]  Mr. Green will be given time to show cause why this action should not be dismissed as against Dr. Satchell for failure to serve within 120 days.  See Fields v. Okla.State Pen., 511 F.3d 1109, 1113 (10th Cir. 2007).

**IT IS THEREFORE BY THE COURT ORDERED** that defendant KDOC's motions for extensions of time (Doc. 49, 52) are granted to and including the date on which the Martinez Report was filed.

---

[25]    Pursuant to the Federal Rules of Civil Procedure the court is authorized to impose the costs for effecting service of summons upon a defendant if a defendant fails to comply with a plaintiff's request for waiver of service of summons, absent a showing of good cause for defendant's noncompliance. Fed.R.Civ.P. 4(d)(2).

[26]    Kansas allows service of a summons by return receipt delivery, including by "certified mail . . . in each instance evidenced by a written or electronic receipt showing to whom delivered, date of delivery, address where delivered, and person or entity effecting delivery."  K.S.A. § 60-303(c).

[27]    Federal Rule of Civil Procedure 4(m) provides:

Time Limit for Service.  If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court-on motion or on its own after notice to the plaintiff-must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

**IT IS FURTHER ORDERED** that plaintiff's motion to clarify status and to cease all action in this case (Doc. 51); motions to proceed to discovery and trial (Docs. 60, 65); and motions to enforce orders (Docs. 60, 63, 66) are denied, without prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (Doc. 60) is denied.

**IT IS FURTHER ORDERED** that the motion of defendant CCS for summary judgment (Doc. 56) is granted, and that this action is dismissed as against defendant CCS.

**IT IS FURTHER ORDERED** that the motion of defendant CCS for more definite statement (Doc. 57) is denied as moot.

**IT IS FURTHER ORDERED** that the motion of defendant Lawhorn for judgment on the pleadings (Doc. 61) is hereby converted to motion of defendant Lawhorn for summary judgment.

**IT IS FURTHER ORDERED** that plaintiff is granted thirty (30) days in which to file a proper Memorandum in Opposition to defendant Lawhorn's motion for summary judgment, which complies with district court rules and Fed.R.Civ.P. Rule 56; and that defendant Lawhorn is granted thirty (30) days after receipt by him of plaintiff's Memorandum in Opposition to file his Reply that complies with the relevant rules.

**IT IS FURTHER ORDERED** that plaintiff is given twenty (20) days in which to show cause why this action should not be dismissed, without prejudice, as against defendant Dr. Satchell, for failure to serve this defendant within the time required under Fed.R.Civ. 4(m).

**IT IS SO ORDERED.**

Dated this 19th day of September, 2011, at Topeka, Kansas.

<u>s/Sam A. Crow</u>
U. S. Senior District Judge